In re SCHOFIELD.

(District Court, E. D. Pennsylvania.    June 19, 1905.)

No. 387.

1. BANKRUPTCY—ASSETS OF ESTATE—LIFE INSURANCE POLICY.
    An endowment policy of insurance on the life of a bankrupt, payable to him at the end of the term if living, or in case of his prior death to his

wife. is one in which he has an interest which passes to his trustee for the benefit of his creditors.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 201.]

**2. SAME—DISCHARGE—FRAUDULENT CONCEALMENT OF PROPERTY.**

The failure of a bankrupt to schedule a life insurance policy payable to his wife in case of his death, taken out at her instance and on which she had paid all the premiums, even though such policy as matter of law belonged to his estate and should have been scheduled, will not debar him from the right to a discharge on the ground of concealment of property or making a false oath, where the omission was made in good faith on the advice of counsel that the policy was the property of his wife, and where he frankly stated the facts in relation thereto on his examination, produced the policy when required. and on a determination that it belonged to the estate paid the surrender value ; such facts being insufficient to show that the omission was knowingly and fraudulently made.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, §§ 611, 729, 775.]

In Bankruptcy. On report of referee.

The following are the reports of Theodore M. Etting, referee, omitting the formal parts :

From the evidence above referred to, I find the facts to be as follows :

J. Dobson Schofield, whose application for discharge is now under consideration, was adjudged a bankrupt upon his own petition on the 21st day of December, 1899. Some 6½ years previous thereto, the bankrupt had taken out a policy of insurance on his own life. This policy, the premiums on which had been paid by his wife, was in full force and effect at the time of the application and adjudication before referred to. Being in doubt as to whether or not the policy in question should be included in his schedules, the bankrupt consulted his counsel. and under his advice the policy was omitted, and the answer made to the inquiry contained in Schedules B3c in reference to the existence of policies of insurance was "None." When examined by his creditors, in answer to a specific inquiry relative to insurance, the bankrupt stated that he had an endowment policy of $5,000, which was payable to his wife, at whose instance it had been taken out and who had paid the premiums thereon, and in whose keeping the policy then was. At the next meeting of creditors, the policy was, on call, produced.

I find that said policy of life insurance is dated July 13, 1893, and that it was issued by the New England Mutual Life Insurance Company, of Massachusetts, upon the life of J. Dobson Schofield, for the sum of $5,000, payable at the end of 30 years to the said J. Dobson Schofield, or, in case of his death prior to that date, to his wife, Annie P. Schofield, if she survived him, otherwise to his executors or administrators. On the back of the policy is printed section 76 of the Massachusetts insurance act of 1887 (St. 1887, p. 818, c. 214), which provides against forfeitures for nonpayment of premiums after two full annual premiums had been paid ; and further provides that every such policy shall have a surrender value, that its holder may, upon any subsequent anniversary of its issue, surrender the policy and claim and recover its cash surrender value. but that no surrender shall be made without the written assent of the person to whom the policy is made payable. I find the surrender value of the policy above mentioned at the time of the bankruptcy was $681.63.

Upon its production the policy was claimed by creditors as a part of the assets of the bankrupt's estate. This claim was resisted by the bankrupt on the ground that the policy belonged to his wife. Pending the determination of the issue thus presented, the referee directed that delivery of the policy be made to the trustee in bankruptcy. and this order the bankrupt forthwith obeyed, continuing to protest. however, that the property was not his, but his wife's. The interest of the local agent of the company was enlisted by the bankrupt, who called upon him on several occasions, to obtain his assistance.

The trustee was likewise informed that the position taken at the home office of the company was that the policy was the property of the beneficiary, Annie P. Schofield, the wife of the bankrupt, and that its surrender value could only be paid by her signature or with her approval. The referee heard argument on the question thus raised, and, after concluding that the bankrupt had an interest in the policy, entered an order directing him to assign such interest to the trustee in bankruptcy. The bankrupt after some delay concluded to pay, and did pay, the trustee the full cash surrender value, less an allowance of $208, on account of his exemption, and the policy was then returned by the trustee to the bankrupt.

In the objections raised to his discharge the bankrupt is charged with having knowingly and fraudulently concealed a policy of life insurance in which he had an interest, to wit, the cash surrender value of $681.63, which it is averred was payable to him, and also with having knowingly and fraudulently made a false oath, in that in the petition and schedules he stated he had no policies of life insurance. The same questions of fact and law are involved in both specifications. The only witnesses examined were the bankrupt, his counsel, the local agent of the insurance company, and the trustee. From the evidence thus presented, it is clear that the policy was taken out at the request of Annie P. Schofield, the wife of the bankrupt, some 6½ years before the filing of the petition of his bankruptcy, and that the premiums were paid by her. It further appears that the bankrupt was in doubt, when his schedules were being prepared, whether the policy should or should not be included therein, and that upon this subject the advice of counsel was sought. That the advice thus sought was given with full knowledge of the circumstances is abundantly proven by the testimony of counsel. "The schedules," he says, "were prepared by me with particular reference to the omission in the schedules of the policy of insurance in question in these proceedings. The omission was made upon my advice with full previous knowledge of all of the facts which have been testified to in these proceedings. * * * Whilst I never saw the policy, I saw a copy of the policy and advised the bankrupt to put the word 'none' upon the schedules opposite the question of insurance policies. The answer is in my handwriting."

Recurring to the policy, it follows, as a conclusion of law, that the bankrupt had an interest therein which passed to the trustee in bankruptcy as a part of his estate, whether the policy had or had not a cash surrender value. In re Welling, 7 Am. Bankr. Rep. 340, 113 Fed. 189, 51 C. C. A. 151. The existence of the policy, therefore, should have been disclosed in the schedules. If there was a doubt, the doubt should have been resolved in favor of its inclusion. But, whilst this is the rule, the more important question is whether the bankrupt's failure in the above regard should bar his discharge. The answer to this question depends, not upon his mere fault in the above respects, but upon his ability to satisfy the court of his good faith. If he can do this, then the law will relieve him. The bankrupt's conduct was, in my judgment, consistent with good faith. I think he honestly believed at the time the schedules were prepared that the policy belonged to his wife, and that his signature was appended and his oath taken under that belief. Upon a question which was primarily one of law rather than of fact, he sought the advice of counsel; and that the advice of counsel was sought and given in good faith I have not the slightest doubt. The case above referred to had not been then decided, and the question submitted was not free from difficulty or uncertainty. When the existence of insurance was inquired into by his creditors, the bankrupt without hesitancy frankly avowed that the policy in question had been taken out. I can see no impropriety whatever in his obtaining the testimony of the local insurance company in support of his contention that the policy belonged to his wife. If he had a right to contest at all, he was surely entitled to obtain such evidence as was requisite for the proper presentation of the case.

The trustee was paid the full cash surrender value of the policy, less the amount allowed on account of bankrupt's exemption. I think it may well be doubted whether the creditors have not thus obtained a considerably larger sum than the trustee could have obtained by adverse proceedings or by a sale to any third party of the bankrupt's interest.

No evidence has been submitted of fraudulent intent or corrupt motive, and for the reasons above stated I respectfully recommend that the objections be dismissed, and the bankrupt be discharged.

### Supplemental Report of Referee on Exceptions Filed.

Notice having been served by the referee on counsel for bankrupt and for creditors opposing his discharge that his report was completed, and that he would file the same on the 24th day of February, 1905, counsel for creditors opposing the bankrupt's discharge filed exceptions thereto, which are hereto attached. After giving careful and attentive consideration thereto, and after hearing argument thereon, I can find nothing to warrant the disturbing of the findings of fact previously reported. If authority be required to support the conclusions of law deducible from the above facts, it is believed that it will be found in the following cases: In re Rauchenplat, 9 Am. Bankr. Rep. 763; In re Blalock (D. C.) 9 Am. Bankr. Rep. 269, 118 Fed. 679; In re Breitling, 13 Am. Bankr. Rep. 126, 133 Fed. 146, 66 C. C. A. 212.

I have accordingly dismissed the exceptions.

Charles S. Schofield, for bankrupt.
J. Siegmund Levin, for objecting creditors.

HOLLAND, District Judge. Specifications of objection to the discharge of J. Dobson Schofield, bankrupt, were filed by creditors, and referred to a referee, who, after taking much testimony, filed a report on March 31, 1905, recommending that the objections be dismissed and the bankrupt be discharged.

The referee's findings of fact are justified by the evidence; his conclusions of law are approved; and the report recommending that the objections to the discharge of the bankrupt be dismissed, and that the bankrupt be discharged, is affirmed.