### In re CHURCHILL.

(District Court, E. D. Wisconsin. September 7, 1912.)

1. BANKRUPTCY (§ 143*)—ASSETS—INSURANCE POLICIES.

   Aside from the question of exemption, insurance policies or bonds having a surrender or disposable value are assets passing to the bankrupt's trustee.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. § 143.*]

2. BANKRUPTCY (§ 396*)—EXEMPTIONS—STATE STATUTE—INSURANCE POLICY.

   St. Wis. 1898, § 2347, provides that a married woman may insure for her sole use the life of her husband, and that he may cause his life to be insured for her sole use, and every policy, when expressed to be for the benefit of, or assigned or made payable to, any married woman, shall inure to her separate use and benefit, and that of her children, and in case of her surviving the term of the policy the amount of the insurance shall be payable to her or to her trustee, for her use, free from the claims of her husband's creditors. Held, that such section referred only to ordinary life insurance, and did not include a policy payable to a married woman in case her husband, the insured, died within 20 years, but declaring that in case he survived that period he should have the option of settling the policy for his own benefit in one of four different ways, and that, in default of selection, it should be deemed settled according to the first option, which provided for paid-up insurance, with an annual income to the insured for life, which policy, on the husband becoming a bankrupt, inured to the benefit of his trustee.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668, 670; Dec. Dig. § 396.*]

· In the matter of bankruptcy proceedings against Charles Churchill. A referee's order having been entered, directing the bankrupt to turn over to his trustee a certain policy of life insurance, he applies for review. Affirmed.

The bankrupt scheduled a policy of insurance in the New York Life Insurance Company for the sum of $2,000, issued to him December 20, 1892. It provided, first, for the payment of $2,000 to his widow, in case of the death of the assured during "the continuance of this bond policy," or, in the event of her prior death, to the insured's executors, administrators, or assigns; second, that if the death of the assured occur prior to December 8, 1912, and the premiums paid, with interest as stated, exceed the face amount of the bond policy, such excess would be paid as a mortuary dividend. Certain clauses of the policy gave the assured benefits or options as follows:

"If the insured is living on the 8th day of December in the year nineteen hundred and twelve, and if this bond policy is then in force, the premiums having been paid in full to that date, the insured shall be entitled to one of the following benefits:

"1. The continuance of this bond policy, which then becomes a paid-up insurance, payable at the death of the insured, together with an annual income during the life of the insured of eighty dollars and —— cents per annum (being equal to four per cent. of the total amount of annual premiums paid), the first payment of said income to be made to the said insured, if living, on the 8th day of December, nineteen hundred and thirteen, and an equal payment to be made annually thereafter, provided the said insured shall be living when such annual payment becomes due, and, in addition, the conversion of the surplus then apportioned by the company to this bond policy into a life annuity, payable together with the income above guaranteed.

"2. The continuance of this bond policy, guaranteeing a paid-up insurance and an annual income as specified in benefit '1,' and the withdrawal in cash of the above-defined surplus.

"3. The surrender of this bond policy to the company for its cash value, which is hereby guaranteed shall not be less than two thousand dollars, and which shall, in addition to that amount, include the above-defined surplus.

"4. The surrender of this bond policy, and the conversion of its cash value, as above defined, into an annual income during the life of the insured, payable in like manner as provided in benefit '1,' it being hereby guaranteed that the annual amount of such income shall not be less than two hundred and forty-nine dollars and ten cents.

"Provided, however, that the insured shall notify the company, in writing, not less than three months before the first-named date above, which privilege is selected, and that, in default of such notice, benefit '1' shall be considered selected."

In the bankruptcy proceedings the policy is stated to be payable to his wife as beneficiary, and that the interest of the bankrupt therein is of no value. The adjudication occurred September 15, 1910, the policy being in force, 18 annual premiums having been paid.

The bankrupt and his wife made application for an order declaring the insurance policy to be exempt and free from any claim on the part of the trustee, which application the referee denied, but directed the bankrupt to turn over to the trustee the policy of insurance. The order of the referee is brought here for review.

D. L. Jones, of Waukegan, Ill., and Peter Fisher, of Kenosha, Wis., for bankrupt.

E. E. & E. L. Browne, of Waupaca, Wis., for trustee.

GEIGER, District Judge (after stating the facts as above). The question is presented whether the insurance policy is property passing to the trustee, to be disposed of for the benefit of creditors, or

whether it is exempt under the laws of the state of Wisconsin. The policy, it is conceded, was not of the class referred to in section 70a, subd. 5, of the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), as having a cash surrender value payable to the bankrupt;' but the question is whether the policy, if property, comes within the provision of section 6 of the act, allowing the bankrupt to retain the exemptions provided in the state law.

[1] Aside from the question of exemption, insurance policies or bonds, of the character held by the bankrupt, have uniformly been treated as property of the bankrupt, passing to the trustee. In re Welling, 113 Fed. 189, 51 C. C. A. 151; In re Hettling, 175 Fed. 65, 99 C. C. A. 87; In re Schofield (D. C.) 147 Fed. 862; In re Slingluff (D. C.) 106 Fed. 154; Hiscock, Trustee, v. Mertens, 205 U. S. 202, 27 Sup. Ct. 488, 51 L. Ed. 771; In re Orear, 178 Fed. 632, 102 C. C. A. 78, 30 L. R. A. (N. S.) 990; In re Coleman, 136 Fed. 818, 69 C. C. A. 496.

An examination of these cases shows that a liberal construction has been given to the language of the Bankruptcy Act, and the right of the trustee to take the policies has been upheld, whether at the time of the adjudication a cash surrender value was obtainable, either by the express terms of the policy, or through a practice or concession of the company issuing the policy, or even where the proof would show that the policy, whatever its terms may be, was salable or capable of transfer in the market. An examination of the policy in question, and particularly the terms relating to benefits or options accruing to or to be exercised by the assured at the expiration of the 20-year period, clearly shows a reservation of rights, doubtless valuable, and susceptible of appraisal and sale; and this brings the case to the single point as to the exemption of the policy under the laws of the state of Wisconsin.

[2] Subdivision 19 of section 2982, Statutes of the State of Wisconsin, provides that money arising under any policy of insurance, payable to a married woman, shall be exempt from the claim of her husband and his creditors, subject to the provisions of section 2347, which latter reads as follows:

"Any married woman may, in her own name, or in the name of a third person as her trustee with his assent, cause to be insured, for her sole use, the life of 'her husband, son or other person, for any definite period, or for the natural life of such person, and any person, whether her husband or not, effecting any insurance on his own life or on the life of another, may cause the same to be made payable or assign the policy to a married woman, or to any person in trust for her or her benefit; and every such policy when expressed to be for the benefit of, or assigned or made payable to any married woman or any such trustee, shall inure to her separate use and benefit and that of her children, and in case of her surviving the period or term of such policy, the amount of the insurance shall be payable to her or her. trustee for her own use and benefit, free from the claims of her husband' and of the person effecting or assigning such insurance, and from the claims of their respective representatives and creditors. * * *"

Is the policy now before the court such as is intended by the statute to be exempt?

It is my judgment that the insurance referred to in the statute means the ordinary life insurance, and does not mean investment insurance, such as is covered by this "bond" or policy. If the bankrupt should not survive the 20-year period, the widow's right under the policy would accrue; but, unless the bankrupt dies within that period, the terms of the policy leave to him the sole disposition of whatever may accrue upon the policy, either through direct exercise of options, or through nonaction on his part, which latter is expressly declared to be equivalent to an election of the first benefit specified.

These provisions of the bond are like those under consideration in Ellison v. Straw, 119 Wis. 502, 97 N. W. 168, and held not to be within the contemplation of the exemption law; and in the recent case of Allen v. Central Trust Co., 143 Wis. 381, 127 N. W. 1003, 139 Am. St. Rep. 1107, where the 20-year period had expired, and, through one of the options, the assured, prior to bankrupcy, made his wife the sole beneficiary, thereby transforming the contract and giving it the essential character of a pure life insurance agreement, the court, while sustaining the claim of exemption, intimates that, except for the transformation which had occurred prior to bankruptcy, the policy would be deemed to be nonexempt, because by its terms the fund was payable to be assured in his lifetime.

A failure to restrict the exemption statute to such policies as contain only the elements therein specified must, as a practical matter, frustrate to a very large extent the purpose of the Bankruptcy Act to secure to creditors the valuable property rights in life insurance contracts. Such rights might then be secured and preserved to a bankrupt by embodying in the policy, as incidental or collateral, or even as dominant, for a limited time, the elements contained in the state statute as a basis for exemption. In the Ellison Case, supra, the following language is used:

"Life insurance is one thing; investment is another. But the ingenuity of the life insurance companies in formulating contracts which confuse the distinction has been active for generations. Pure life insurance has become rare, except with beneficial associations; but the gradations from that contract, with some slight provision for accumulation of dividends, to contracts where the accumulation is the predominant, if not even the exclusive, purpose, are almost numberless. Life insurance is a promise to pay a certain sum upon the death of the assured. [Citing cases.] Doubtless the amount so payable may be augmented by accumulation of excessive premiums and their earnings in the hands of the company without destroying the essential character of the contract. When, however, we find, as frequently, a promise to repay a sum made up from a portion of the premiums and their earnings at a date certain in the lifetime of the assured, we have only a contract such as a savings bank may as well make. Uhlman v. New York L. Ins. Co., 109 N. Y. 421, 430, 17 N. E. 363 [4 Am. St. Rep. 482]. Whether such fund, if payable to a married woman, is life insurance within the terms of section 2347, and exempt from debts of either the husband or wife, in absence of intent to defraud creditors, we need not decide, nor perhaps question, in this case. See Talcott v. Field, [34 Neb. 611, 52 N. W. 400, 33 Am. St. Rep. 662]; Studebaker Bros. Mfg. Co. v. Welch, 51 Neb. 228, 70 N. W. 920. We have already shown and declared that the particular provision now under consideration is in no wise for the benefit of Mrs. Straw. The fund is by the terms of the policy as absolutely the property of and payable

to A. W. Straw as would be an accumulation in a savings bank or building and loan association. It is not 'made payable to a married woman,' or to any trustee for her, within the terms of section 2347, and therefore is not protected by the further provision that insurance so payable shall be free from the claims of creditors."

So, in the case at bar, except for the agreement to pay to the widow upon the death of the bankrupt *within 20 years,* the policy is not "made payable to a married woman." Whether she will have any other benefits depends wholly upon the option of the husband to give them to her. He has the absolute option under the contract to appropriate them to himself. I think the exemption statute contemplated such insurance policies as by their terms secure to a married woman the intended benefits upon the death of her husband, and not such limited contracts by which such benefits would accrue only in the event of his death within a period specified, at the expiration of or beyond which he could secure to himself, as against his wife, the very benefits which the exemption statute contemplated should accrue to her, and which the Bankruptcy Law contemplates should accrue to the creditors unless secured to the wife by the exemption law. While full recognition should be given to the laudable intent of the exemption law to afford protection to married women and widows by securing insurance payable to them, equal heed must be given to the legislative intent "not to screen the husband in building up for himself a fund beyond the reach of his creditors."

The conclusion is therefore reached that the policy in question is property passing to the trustee, not exempt by the laws of Wisconsin.

The order of the referee is affirmed.