Coffeen, Appellant, vs. Town of Preble, Respondent.

*February 22—March 15, 1910.*

*Poor-laws: Relief in emergencies: Questions for jury.*

1. Under sec. 1499, Stats. (1898), a distinction exists between that degree of poverty and indigence which will entitle one to support from the town and that which will entitle him to temporary relief in emergency.

2. Where the necessity for aid is urgent and the afflicted person poor, indigent, and helpless to such a degree that obtaining relief without town aid in time to save life or health may be impossible, it cannot be said as matter of law that he is not entitled to relief from the town merely because he possesses some meager property not immediately available for conversion into cash or as a basis of credit.

3. It was a question for the jury in this case whether a family consisting of father, mother, and minor son, all of whom were ill with typhoid fever and bedridden, were entitled to relief from the town, although they owned a homestead worth $725, subject to a mortgage not exceeding $450, and had about $7 in money and some credit at a grocery.

   Marshall, J., dissents.

Appeal from a judgment of the circuit court for Brown county: S. D. Hastings, Circuit Judge. *Reversed.*

This action was brought to recover for medical services rendered for the Doyle family, alleged poor persons, which services are alleged to have been performed at the special instance and request of the defendant town. The defendant, after certain admissions, denied that said Doyles were paupers and also that the town had ever engaged the plaintiff to attend them. The jury returned the following verdict:

"(1) What was the value of Michael Doyle's property in March, 1907? A. $725.

"(2) Did the chairman of the defendant town, with the knowledge and consent of another supervisor of said town, employ the plaintiff, W. B. Coffeen, as a physician to attend and take care of Michael Doyle, his wife and son? A. Yes."

It appeared without dispute that there was a mortgage of $400 upon the property and some interest not exceeding $50, leaving the equity of redemption worth between $275 and $300.   Both parties moved for judgment on the verdict. Thereafter the court made and filed its decision, which appears in the record, and ordered judgment for defendant dismissing the plaintiff's complaint.   Judgment was rendered accordingly in favor of the defendant, from which this appeal was taken.

For the appellant there was a brief by *Calkins & McGruer*, and oral argument by *L. A. Calkins.*

For the respondent there was a brief by *Kaftan & Reynolds,* and oral argument by *R. A. Kaftan.*

The following opinion was filed March 15, 1910:

Kerwin, J.   Sec. 1499, Stats. (1898), provides:

"Every town shall relieve and support all poor and indigent persons . . . whenever they shall stand in need thereof. . . ."

It will be seen that this statute provides for "relief" as well as "support" in case of need; and the question arises whether the Doyles were poor and indigent persons in need of relief or support.   If so, the supervisors had authority under the statute to bind the town for such relief.   The jury found that defendant employed the plaintiff as physician to perform professional services in taking care of the Doyle family, and also found the value of Doyle's property to be $725.   The findings are supported by the evidence.   The foregoing were the only questions submitted to the jury.   It further appears without substantial dispute that the head of the Doyle family, consisting of father, mother, and minor son, owned a house and one acre of land in the country constituting a rural homestead, which was subject to a mortgage of $400 and some accrued interest not exceeding $50; that the mother had $7 in money and the father some credit

at the grocery; that at the time of the employment of plaintiff the whole family were ill with typhoid fever, and were then residents of the defendant town. About a month after the contract with plaintiff was made the Doyles succeeded in getting $100 on a second mortgage on the homestead.

It will be observed that this is not a proceeding to compel the town to support the Doyles or a suit to hold the town liable for their support, but an action by the physician to recover on a contract of employment in a case where the poor and indigent persons were in need of relief because of their helpless condition occasioned by the sickness of all members of the family. All occupants of the house were down sick and bedridden. They were unable to procure a nurse, and the plaintiff notified the town officers, who furnished and paid for a nurse. The $7 which Mrs. Doyle had was needed for the purchase of milk for the three sick persons. Now it is plain, we think, under the statute that the town is bound to furnish to poor, indigent persons relief as well as support. "Relief" is a relative term, and covers such an emergency as is claimed here by the plaintiff, and the question whether the afflicted person was so poor and indigent as to entitle him to relief from the town notwithstanding he had some little property not edible or easily convertible was a jury question. *Poplin v. Hawke,* 8 N. H. 305; *Sturbridge v. Holland,* 11 Pick. 459. It is easy to see that a distinction exists between that degree of poverty and indigence which will entitle one to support from the town and that which will entitle him to temporary relief in an emergency. The distinction is recognized in *Rhine v. Sheboygan,* 82 Wis. 352, 52 N. W. 444. It is doubtless true that if the whole family had not been bedridden, but one had remained who could have gone out and made an effort to negotiate a loan upon the small equity in the property or procure a nurse, some effort should have been made in that direction before applying to the town for relief. But where, as in the case before us, the necessity for aid is

urgent, and the afflicted person poor and indigent to such a degree that obtaining relief without town aid in time to save life or health may be impossible, it cannot be said as matter of law that the person possessed of the meager property shown in this case is not entitled to such relief. Whether the person is entitled to relief must depend upon the particular facts of the case. The comparative lack of property, the severity of the affliction, the helplessness of the person applying for relief, the necessity for immediate action, and the availability of his property for conversion into cash or as a basis for credit, as well as the situation of the afflicted with respect to prosperous and willing friends and relatives, are all to be considered. It is obvious from the opinion of the learned trial judge in the record, in connection with the special verdict submitted, that he did not consider the question as to whether the Doyles were entitled to relief under the evidence a jury question, but held as matter of law, upon the verdict and undisputed facts, that they were not entitled to relief. In this we think the court was in error. There was a jury question as to whether the afflicted person was so poor and indigent as to entitle him to relief from the town. If we consider that the court found this question in favor of the town under sec. 2858*m,* Stats. (Laws of 1907, ch. 346), then he found incorrectly, because it is apparent from his written opinion that he considered the subject too narrowly. It follows that the judgment must be reversed.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for a new trial.

The following opinion was filed April 8, 1910:

MARSHALL, J. (*dissenting*). The case turns on the meaning of this language in sec. 1499, Stats. (1898):

"Every town shall relieve and support all poor and indigent persons . . . whenever they shall stand in need thereof. . . ."

The court has nothing to do with making the policy of the statute. It may be that it would be a very humane policy to relieve persons at public expense who are poor in the general sense, when so situated as not to, presently, have the means of coping with misfortune, though having property or credit so that they are not under such complete disability but that by use of their personal credit, or that and some property, though not having money presently available, they can care for themselves, but does the statute contemplate such relief? That is the question. If it does not, it is not within the competency of the court to extend the purpose of the written law by a species of judicial charity. If it were otherwise, the situation in this case, like many others met with, from time to time, would efficiently call upon human sympathy. It is only given to us to discover the legislative idea incorporated into the written law. If it goes further than would seem to us to be wise public policy, we cannot restrict it. If it does not go so far as such policy would seem to demand, we cannot extend it in general, or to fit the exigencies of particular cases.

The court gives much signification to the use of the term "relief" as well as "support" in the statute as if the legislative idea was to provide for "relief" in cases where there is a degree of poverty not requiring more than temporary help, and "support" where there is actual pauperism, but to my mind no such idea was in legislative contemplation. No such thought has heretofore found a place in any adjudication of this court. It will be noted that there is but one class of persons made by the statute competent to receive public aid, viz., poor and indigent persons. Such and only such are entitled to either relief or support. Poverty and indigence is the sole test of whether an applicant for public aid is entitled thereto, to any extent. Therefore, the basic question in this case, is, What does the statute mean by "poor and indigent?" If the court has spoken plainly and decisively on that question, the doctrine of *stare decisis* should apply, un-

less the court is prepared to overrule previous adjudications, which I do not understand to be the case.

It is suggested that in *Rhine v. Sheboygan,* 82 Wis. 352, 52 N. W. 444, the court recognized the existence of a degree of poverty, not extreme, which will entitle a person to temporary relief, but not temporary support. True, *arguendo,* and wholly *obiter,* something was said about urgency of condition and authority within the spirit of the law to afford some degree of relief, and not support. Even that referred to conditions of urgency, not to any power to add by public contribution to the ability of a person, partially short on means, to enable him to provide for his needs without entirely using up what means and credit he has, and without any suggestion that it was within the letter of the statute. Coming to the words of decision, it was said:

"It is not the poor man, as contradistinguished from the man of ample means or the rich, that is an object of charity; it is the *pauper,* and not the poor man in the ordinary sense of the term, the man not only in want, but who has no means or resources for relieving it, who is entitled to the statutory aid provided in obedience to the dictates of the humane policy of the statute relating to the poor."

Mark the language, "no means or resources for relieving it, who is entitled to the statutory aid provided in obedience to the dictates of the humane policy relating to the poor." "The word 'poor' in the statute has a restricted and technical meaning, and it is practically synonymous with 'destitute,' denoting extreme want and helplessness." In harmony with that construction the court held that public aid was not permissible in the particular case which had substantially the characteristics of this case.

Thus it will be seen that this court has held that public aid, either in the form of relief or support, cannot properly be extended to a person unless he is of the class denominated "poor and indigent," and that "poor and indigent" is a synonym for "pauper," and that pauper means a person who is

utterly destitute, and that such restricted meaning cannot be extended by charitable considerations to meet particular situations.

In *Wis. K. I. Co. v. Milwaukee Co.* 95 Wis. 153, 70 N. W. 68, the construction of the statute above indicated was affirmed, and it was held that a law to extend aid to a person by way of treating him for an infirmity merely because he has not the means, presently, to pay therefor himself, not only, is not within the statute under consideration, but that a legislative act to accord such aid would be unconstitutional; that to come within the statute or within the competency of the legislature to provide by written law, the person must be a pauper; a person in "extreme want and helplessness." That was referred to approvingly in *Wis. Ind. School v. Clark Co.* 103 Wis. 651, 666, 79 N. W. 422, and again in *State ex rel. Garrett v. Froehlich,* 118 Wis. 129, 94 N. W. 50, as holding that mere destitution respecting present means does not fall within the statute or the constitutional right to relieve poor persons; that destitution in the extreme sense, is required.

This court having thus by a long line of decisions construed our statute, no good reason seems to exist for seeking for light in foreign jurisdictions. Excursions of that kind and drafts from judicial observations without attempting to overrule the previous declarations here, tend to confuse.

As I understand it, there is no claim that the circumstances of this case satisfy the calls of our statute when construed as aforesaid. The evidence is undisputed that the subjects of public charity involved were not paupers. The head of the house was very far from utter financial helplessness. He had both property and credit sufficient to enable him to employ a physician. He had not experienced any failure to obtain medical assistance. It is quite clear that he could readily have obtained all such needed help though, perhaps, not presently able to pay therefor. The supposed poor per-

sons did not make any application to the town officers to employ a physician for them. They had the appellant and were satisfied with him. It was the appellant, seemingly, by consent of the husband and wife, who notified the town that a nurse was needed as the family were all sick and could not attend to hiring one themselves, and had no means, presently, to pay one with. He had been treating the family, taking his chances on their getting well and being able to pay him, or to pay him in due time, as is often the case with people of moderate means. He, at no time, on account of poverty of the family, declined to administer to them. He did not inquire into their circumstances only so far as to satisfy himself that they had no money presently with which to hire a nurse and thereupon, by consent as aforesaid, he asked the town officers, or some of them, to provide one, and was asked to hire a nurse and look after the town interest in the matter. No party to the transaction regarded them as paupers.

In view of the foregoing, I cannot come to the conclusion that the learned trial court was clearly wrong in deciding that the alleged poor persons were not proper subjects, within the meaning of the statute, for public aid.