ELKEY, Appellant, vs. CITY OF SEYMOUR, Respondent.

*April 2—April 29, 1919.*

*Relief and support of the poor: Who entitled to relief: Ownership of property: Contract by city for relief: Discharge of obligation: Offer of payment: Substitution of debtors: Attorneys at law: Remedies of city.*

1. A contract by which the lawful authorities of a city employed plaintiff to relieve the immediate necessities of a person as being one with whose relief the city was chargeable, is binding upon the city.
2. Plaintiff in such case, though bound to know or ascertain at her peril the scope of the power of the city officials making the contract, was not bound to ascertain whether the person to be relieved was lawfully entitled to such relief from the city. That duty rested upon said officials.
3. An aged, infirm woman, having a lawful settlement in a city, who was dangerously ill and had no immediate family who could obtain food and shelter for her and was without any present ability to pay for the immediately needed care, nursing, and shelter, was entitled to relief from the city, within the intent of sec. 1499, Stats.
4. Under the statutes a material distinction exists between relief and support of poor persons.
5. The mere present ownership of property which may subsequently become available to recompense a city for relief or support furnished to the owner, does not create a jurisdictional lack of authority in the proper officials to furnish a contract for the furnishing of such aid.
6. Although plaintiff, who had been employed by the proper officials of a city to furnish relief to a poor person, refused a subsequent offer of such officials to pay her for her services, say-

ing that she would not look to the city but to the attorney of the person relieved, her right to recover from the city was not in any way affected by such refusal, no tender of the amount due having been actually made or kept good.

7. To effect a substitution of debtors, the consent of three, the creditor, the old debtor, and the new debtor, is required.

8. The attorney of the person to whom relief was given, not being shown to have been the attorney or agent of the plaintiff, a payment of money to such attorney by a debtor of the person relieved was not in any way a discharge of the obligation of the city to the plaintiff upon the contract under which the relief was furnished.

9. If there is property or money in which the person who received relief has or had an interest which may be properly chargeable for such relief, the city has ample remedy under sec. 1505a, Stats.

APPEAL from a judgment of the circuit court for Outagamie county: EDGAR V. WERNER, Circuit Judge. *Reversed.*

On February 19, 1915, one Mrs. Henrietta Pioch, then seventy-four years of age or more, was dangerously ill with pneumonia in the city of *Seymour.* At the express request of Dr. Finkle, chairman of the committee on poor of the common council of said city, and with the knowledge and consent of other members of that committee, the plaintiff was hired to care for and nurse Mrs. Pioch, and provide board and room, in plaintiff's own house. The plaintiff did so nurse and care for Mrs. Pioch from that time until April 19, 1915.

At the time of this employment Mrs. Pioch had no immediate family of her own and no property, means of support, or resources other than a claim against her nephew, Herman Eich. This claim was based upon the situation arising between Mrs. Pioch and the nephew by reason of the conveyance, ten or twelve years prior to that time, by her to him of real estate then owned by her, with an agreement by him that he was to provide and care for her during the balance of her life. Subsequent to such conveyance there had been a bond given, apparently as additional security by the nephew to

Mrs. Pioch, with a penalty of $500 expressed therein, conditioned upon his complying with the agreement aforesaid upon which the conveyance had been made.   Mrs. Pioch had left her nephew for a long time prior to February, 1915, and had received no support from him in any manner for quite a time.   The plaintiff's attorney herein, E. C. Smith, had, shortly before February 29th, been substituted as Mrs. Pioch's attorney in that other lawsuit, and negotiations were then pending for a settlement of the same.

It was settled in June, 1915, by the payment by the nephew to Mr. Smith, as such attorney, of the sum of $825, and a release was then given by Mrs. Pioch to the nephew of all claims on her part against him.   A part of the $825 thus received was used by Mr. Smith in paying certain claims against Mrs. Pioch, some of which were outstanding at the time of the employment of the plaintiff in February, 1915. Among such bills so paid was one to Dr. Holtz of about $36 for medical attendance during this particular illness, and another of about $160 to a Mrs. Rohloff, with whom Mrs. Pioch had been living after leaving her nephew's home and prior to going to the home of the plaintiff.   On April 16th Dr. Finkle with several other members of the committee on poor of the common council, together with one Carl Eich, brother of Mrs. Pioch and father of Herman Eich, came to plaintiff's home and with money furnished to Dr. Finkle by Herman Eich offered to pay the plaintiff the amount of her bill.   There is some dispute as to what was said at the time, but it appears that the money was not received by *Mrs. Elkey* then, and there is testimony tending to show that she then stated she would not look to the city for the compensation for her services but instead would look to Mr. Smith, the then attorney for Mrs. Pioch.   The money to pay plaintiff's claim was not actually tendered at the time nor was it subsequently paid into court or held for plaintiff's use in any manner.

Plaintiff filed a claim for such services to the amount of

$72.75 with the common council. She appealed from what she claimed was a disallowance of the claim to the circuit court, and the issues that appeared to be raised between the parties on such trial are sufficiently indicated from the special verdict which was submitted to the jury and which was in substance, as answered, as follows:

"(1) Was Henrietta Pioch, on or about the 19th of February, 1915, in need of relief as a poor person and without money or property to pay her support and maintenance and medical aid? *A.* No."

(2) Plaintiff did nurse, board and lodge Mrs. Pioch between February 19th and April 19th.

(3) The plaintiff was so employed by the committee on poor of the defendant city.

(4) The services rendered and the board and lodging furnished by plaintiff were reasonably worth $72.75.

(5) The committee on poor offered to pay the plaintiff's claim on April 16th at the time her brother came to take Mrs. Pioch away from plaintiff's residence.

(6) The committee at that time had the money or means ready to pay the claim of the plaintiff.

(7) Between February 19 and April 19, 1915, Mrs. Pioch owned a mortgage securing a bond for her support on real estate given by her nephew and then in full force and effect.

(8) The plaintiff on April 16th refused to accept any pay from the defendant city and informed the committee that she would not look to the defendant city but would look to Smith, Mrs. Pioch's attorney, for her pay.

(9) There was an agreement or understanding between Smith and the plaintiff that the said Smith would collect any claim the plaintiff may have against the defendant for the nursing, board, and lodging of Mrs. Pioch from Herman Eich out of any funds received in the action then pending between those two.

(10) It was a part of the consideration of the settlement between Mrs. Pioch and Herman Eich that the claim of the plaintiff was to be paid out of the $825 paid on such settlement by Herman Eich.

The plaintiff moved to change the answers returned by the jury to questions (1), (5), (8), (9), and (10) and to strike

out the answer to the sixth question, and for judgment or for a new trial.

The plaintiff's motions were severally denied and the defendant's motion for judgment upon the verdict was granted, and thereupon judgment was entered dismissing the plaintiff's complaint with costs. From such judgment plaintiff has appealed.

For the appellant the cause was submitted on the brief of *E. C. Smith* of Seymour.

For the respondent there was a brief by *Rooney & Grogan* of Appleton, and oral argument by *F. J. Rooney.*

ESCHWEILER, J. Under the law as it stood at the time the plaintiff undertook to care for Mrs. Pioch, the defendant city was under the provisions of the general statutes relating to the care of the poor, including sec. 1499, Stats., which reads:

"Every town shall relieve and support all poor and indigent persons lawfully settled therein whenever they shall stand in need thereof except as hereinafter provided."

There can be no question under the evidence in this case but that Dr. Finkle, chairman of the committee of the city poor, together with other members of the committee who knew of and acquiesced in his action, were the recognized and lawful authorities and representatives of the city to do the very thing which they undertook to do with the plaintiff, namely, to employ her to relieve the immediate necessities of Mrs. Pioch on February 19th, she then being lawfully settled in said city.

There is here no question as to their authority to bind the city such as was presented in the case of *Hittner v. Outagamie Co.* 126 Wis. 430, 105 N. W. 950.

The jury having very properly found that the lawful authorities of the city made the contract with the plaintiff, the contract thus made bound the defendant. *Dakota v. Winne-*

*conne,* 55 Wis. 522, 13 N. W. 559; *Beach v. Neenah,* 90 Wis. 623, 64 N. W. 319.

While it was incumbent upon the plaintiff, dealing with public officials, to know or ascertain at her peril the scope of the powers of such public officials, she was not required to examine further and to ascertain whether or not the person to whom such lawful authorities proposed to grant relief, as to Mrs. Pioch in this case, did or did not meet the calls of the statute which prescribed the duties and obligations of such authorities in the care of the poor.   That duty rested upon such officers.

At the time in question Mrs. Pioch was old, infirm, and dangerously ill with pneumonia; she could no longer remain in the house of Mrs. Rohloff, with whom she had been staying for some time and to whom she was already indebted for board and lodging to the amount of $160; she had no immediate family to whom she could go or who were in a position to obtain food and shelter for her; she was without any present ability to pay for the immediately needed care, nursing, and shelter, and her position was such that the court could well say, under the undisputed evidence in this case, that she was then entitled to relief from the city within the intent of sec. 1499, Stats.   It was a question of relief rather than of support, and the material distinction between the two has been pointed out.   *Coffeen v. Preble,* 142 Wis. 183, 125 N. W. 954.   The first and seventh questions of the special verdict therefore are considered immaterial.

Sec. 1505*a,* Stats., first created by ch. 136, Laws 1899, provides in substance that if any person who receives any relief or support under the provisions of the same chapter in which is found sec. 1499 was, at the time of receiving such relief or support, the owner of property, then the value of such relief and support shall be deemed a legal and valid claim and debt against such person, and the municipality furnishing the same may sue for and collect the value thereof against such

person, and no statute of limitations shall be pleaded in defense thereto. This indicates quite clearly that it is not the intent of the legislature to make the mere present ownership of property subsequently available to recompense for such relief or support a jurisdictional lack of authority in the proper officials to furnish or contract for the furnishing of such aid.

It is contended that plaintiff must be denied relief because on April 16th, when an offer was made by the chairman of the committee to pay her for such services, she refused the same and stated that she would not look to the city but to Mr. Smith, the then attorney for Mrs. Pioch. And further, on the ground that there was an agreement, as found by the jury, made between plaintiff and Smith that the said Smith would collect the plaintiff's claim out of the funds to be received from the proceedings then pending between Mrs. Pioch and her nephew. And lastly, because, as found by the jury, there was an agreement between the nephew and Smith, at the time of the settlement in June, 1915, that out of the $825 paid by the nephew to Smith as Mrs. Pioch's attorney in settlement of the suit between those two, this claim of the plaintiff should be paid.

We do not think any of these grounds are well taken. The offer to pay made by the committee and refused by *Mrs. Elkey* at that time was not a discharge of the obligation then lawfully subsisting between the plaintiff and the city. The only effect of such offer, if the same had been kept good by payment of the money into court or holding the same for the benefit of the plaintiff, would be to affect the question of interest and costs. There was no such tendering or maintaining of the same as affected the rights of the parties in this action.

There was no substitution of debtors. It requires the consent and agreement of three, the creditor, the old debtor, and the new debtor, to effect such a substitution. *T. W.*

*Stevenson Co. v. Peterson,* 163 Wis. 258, 157 N. W. 750. There is no evidence that at the meeting on April 16th Mrs. Pioch consented to any such proposal, nor is there evidence of any implied or express authority in Mr. Smith, her then attorney, or any one else, to give consent to such substitution of debtors.

There is no evidence in this case which will warrant the conclusion that the payment by the nephew, Herman Eich, of the $825 to Mr. Smith was a payment to the plaintiff of the obligation then subsisting from the defendant to her. It is undisputed that she has not received the money herself. At that time Mr. Smith was Mrs. Pioch's attorney, and the only evidence as to any transactions between him and the plaintiff with reference thereto is to the effect that he suggested to plaintiff that she should reduce the amount of her claim so as to increase the amount that would result to Mrs. Pioch in the proposed settlement with the nephew. There is no support, therefore, for the conclusion that Mr. Smith was occupying a position of such conflicting interests as that of being attorney for Mrs. Pioch, interested in reducing as much as possible plaintiff's claim, and at the same time the agent and attorney for the plaintiff, charged with the duty of collecting, if possible, the full amount of the plaintiff's charges.

If there be property or money in which Mrs. Pioch has now or has had an interest which may be properly chargeable for the relief given to her by the defendant under the contract with the plaintiff, there is ample remedy for the defendant to obtain the same under the provisions of sec. 1505a, *supra.* It follows, therefore, that the court should have directed judgment for the plaintiff for the amount of her claim, with interest and costs.

*By the Court.*—Judgment reversed, and the cause remanded with directions to enter judgment for the plaintiff for the amount found by the verdict.