Lutz and others, Appellants, vs. Dunn, imp., Respondent.

*February 8—March 9, 1926.*

*Novation: Release of original debtor: Statute of frauds: Contracts: For benefit of third person: Evidence: Sufficiency.*

1. Even if a promise was made by a vendor under a land contract to pay a judgment obtained by a third person against the vendee in consideration that the vendee quitclaim his interest in the property and thus avoid a foreclosure, such promise was not a novation without the release of the vendee by the judgment creditor and an agreement between the creditor and the original and substituted debtors that there be a novation. p. 330.

2. An oral promise to pay the debt of another made to his creditor, without an agreement to such effect by the debtor, cannot be upheld because of the statute of frauds. p. 331.

3. A binding promise between two persons for the benefit of a third may be enforced by the latter; but in this case it is *held* there is no sufficient proof of an agreement that the plaintiffs were to pay the judgment against their vendee or that their right to foreclose the land contract was extinguished.  p. 332.

Appeal from a judgment of the circuit court for Marathon county: A. H. Reid, Circuit Judge. *Reversed.*

October 23, 1920, by written contract, the plaintiffs agreed to sell to the defendants Joseph and Mary Pasternick a farm of 137 acres with the personal property thereon for $26,000, with a credit of $5,600 by deed of a farm then owned by said defendants, and with provisions for yearly payments of $1,000 until a designated amount had been paid.  Such defendants took immediate possession of said farm, but thereafter defaulted in the required payments, taxes, and conditions.

May 7, 1921, the defendant *Ernest A. Dunn, Jr.,* obtained a judgment in said county against the defendant here, Joseph Pasternick, and one John Pasternick for $691.83.  An execution was issued thereon May 8, 1922, returned July 21st; again issued on August 10th and returned October 26th wholly unsatisfied.

On Saturday, July 22, 1922, the plaintiffs *Lutz* and *Zell* met with the defendants Joseph and Mary Pasternick and their attorney, Mr. Okoneski, to arrange for some disposition regarding the contract of October, 1920.

The Pasternicks' financial troubles were discussed but no reference made to the *Dunn* judgment.  A tentative agreement was then made in substance that instead of an action being brought by the plaintiffs to foreclose on said contract, that they, the plaintiffs, were to pay $500 cash, execute a promissory note for $1,000 to Mary Pasternick, and assume and pay certain specified then outstanding debts of the Pasternicks, who were to quitclaim and assign to the plaintiffs. A quitclaim deed was then executed and acknowledged be-

fore Mr. Okoneski. The instrument conveyed the real es-
tate in question and also recited, as part of the consideration
from defendants, a conveyance of all the live stock and per-
sonal property except the household goods and certain tools.
It also recited that the plaintiffs, as grantees, "assume and
agree to pay all chattel mortgages and lienable claims when
due now against said premises or personable [sic] property,
which in all amounts to the sum of $796.75 [should be
$755.96], which includes the claim of J. Hanowitz & Son
for $132.16."

The undisputed testimony shows that the above mentioned
amount included a number of claims alleged to be due by
the Pasternicks to third persons but did not include the *Dunn*
judgment. At the close of this conference an inquiry was
raised as to whether or not there was any judgment out-
standing against the defendant Joseph Pasternick, and an
effort was made by Mr. Okoneski to ascertain that fact by
telephoning to the court house, but no information could
be then obtained. Thereupon Mr. Okoneski took with him
such quitclaim deed and other papers and no delivery of the
same was made that afternoon. The Pasternicks imme-
diately thereupon gave up possession and moved to Detroit.
Mrs. Pasternick pledged said note of $1,000 with the State
Bank of Mosinee as collateral to a new note of hers on
July 24th.

On Monday, July 24th, the existence of the said *Dunn*
judgment was ascertained. Mr. Okoneski communicated
with defendant *Dunn's* attorney and made an offer on be-
half of the Pasternicks to pay $100 for a release of the
judgment against the farm, and such offer was accepted and
*Lutz* and *Zell* so informed. Later, but apparently the same
day, *Lutz* and *Zell* conferred with *Dunn's* attorney and sub-
sequently had interviews with *Dunn* and his father. There
is substantial dispute as to these conversations; defendant
*Dunn* and others testifying that the plaintiffs produced at

one or more of such interviews the quitclaim deed above described, that it was read, and that plaintiffs said that *Dunn* ought not to take the $100, for they, the plaintiffs, had agreed with the Pasternicks to assume and pay the *Dunn* judgment in full. On cross-examination the *Dunns* testified that mention was made by the plaintiffs of the $1,000 note aforesaid which was to be held at the Bank of Mosinee as collateral and that sufficient had been held back in the bank to pay this judgment, and that he, *Dunn,* should not accept less than the full amount of his judgment.

During these interviews some suggestion was made that the plaintiffs should receive some compensation for their having made such an arrangement to the benefit of *Dunn,* and the latter states that he did in the first instance agree to allow a ten per cent. commission if the amount of the judgment was paid promptly. No payment was made, and August 11th the defendant *Dunn* issued garnishee proceedings upon the execution and apparently against *Lutz* and *Zell* as well as the bank which held the $1,000 note of Mary Pasternick, and claims to have notified the plaintiffs or served notice thereof upon them. This garnishment was dropped by defendant *Dunn,* relying, it is claimed, upon the renewed promise of the plaintiffs to pay the judgment. Several letters were written to plaintiffs on behalf of *Dunn* in October without result and the offer of a discount in effect withdrawn. The quitclaim deed was never recorded and was held in escrow for a time by one of the creditors and subsequently delivered to Mr. Okoneski, who produced it as a witness on the trial.

September 29, 1923, defendant *Dunn* commenced an action against *Zell* and *Lutz,* alleging the judgment recovered against Joseph Pasternick aforesaid; that in July, 1922, the said *Zell* and *Lutz* purchased the farm and personal property, and as part of the consideration for such purchase agreed to pay the sum of $500 and to pay the said judgment

as well as all other sums due on said lands and personal property; that the property and the deed were thereupon delivered and *Lutz* and *Zell* took possession, and by reason thereof became liable and obligated to pay the said judgment as well as the other debts and liabilities. He asked for the amount of said judgment with interest from its entry. On October 4th following, *Lutz* and *F. J. Zell* and his wife commenced an action against the two Pasternicks and *Dunn* to foreclose the contract of October, 1920; reciting that on July 22, 1922, *Lutz* and *Zell* attempted to make a settlement with the defendants Joseph and Mary Pasternick, and as a part thereof there was executed their promissory note to Mary Pasternick for $1,000; that such agreement was upon the condition that there were no judgments recorded against the Pasternicks, and that if such were in existence the note · was to be delivered, paid, and canceled, and the plaintiffs were to foreclose. It further recited the recording of the *Dunn* judgment aforesaid and prayed for the foreclosure of the land contract, cancellation of said $1,000 note, and that all other claims against said real estate be barred. No appearance was made by the Pasternicks. Thereafter upon application of *Dunn* the two actions were consolidated and ·thereafter tried by the court as one. The court found, among others, the following as facts:

An agreement of July 22, 1922, between the Pasternicks, *Lutz,* and *Zell* for the return of the farm and sale of the personal property, the giving of the quitclaim deed, all in consideration of $500 in cash, a promissory note of $1,000 to Mary Pasternick, and surrender of possession, *Lutz* and *Zell* agreeing to pay the indebtedness of the Pasternicks, recited in the quitclaim deed to amount to $796.75. That the deed and transfer of personal property were then executed, but not delivered until a later date. That on said July 22d *Lutz* and *Zell* were not informed of the *Dunn* judgment, but were on the following Monday, July 24th,

and then, "in consummation of their purchase from said Pasternicks and as part of the consideration, they agreed to pay the said *Dunn* judgment, and thereupon they accepted delivery of said quitclaim deed and paid the $500 in cash, and gave said $1,000 note and entered into possession of said land and personal property as owners thereof." He also found that *Lutz* and *Zell* within a few days thereafter "informed said *Dunn* that they agreed to pay said judgment, and asked and received from said *Dunn* a promise of discount of ten per cent. of said judgment in consideration of prompt payment to *Dunn* and of having protected him in said purchase, and they stated that they had reserved at the Mosinee Bank sufficient to cover the said judgment."

The trial court held that the demands of the plaintiffs against the Pasternicks have been extinguished by their transactions and that the defendant *Dunn* was entitled to judgment against *Lutz* and *Zell* for the recovery of the amount of his judgment against Pasternick with interest. From such judgment the plaintiffs have appealed.

*E. P. Gorman* of Wausau, for the appellants.

*Alfred W. Gerhard* of Wausau, for the respondent *Dunn*.

ESCHWEILER, J.   The judgment below cannot be supported on any theory of novation, it being undisputed that *Dunn* did not at any time release or agree to release Pasternick from the judgment obligation, and there was no showing of any express or implied agreement that there should be such novation by the required three, the creditor, the old and new debtors. *Peters v. Kanzenbach,* 175 Wis. 602, 604, 185 N. W. 197; *Elkey v. Seymour,* 169 Wis. 223, 229, 172 N. W. 138; *T. W. Stevenson Co. v. Peterson,* 163 Wis. 258, 261, 157 N. W. 750; *Bishop-Babcock-Becker Co. v. Keeley,* 160 Wis. 546, 548, 152 N. W. 189; *Hemenway v. Beecher,* 139 Wis. 399, 401, 121 N. W. 150; 20 Ruling Case

Law, 366; L. R. A. 1918B, note on p. 113. Neither can it be upheld, an agreement to such effect with Pasternick being absent, upon the mere oral promise of *Lutz* and *Zell* to *Dunn* to pay to him Pasternick's judgment, because of the statute of frauds, sub. (2), sec. 241.02 (formerly sec. 2307), Stats. *State Bank of Eastman v. Rawson,* 182 Wis. 422, 433, 196 N. W. 779.

The trial court must have based his determination that *Lutz* and *Zell* were to pay Joseph Pasternick's obligation to *Dunn* arising from his judgment upon, and only upon, a theory that, at some time, the Pasternicks, *Lutz,* and *Zell* agreed that such should be done as part of the transaction between them. And this upon the established doctrine in this state that a binding promise between two persons for the benefit of a third may be enforced by the latter. *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440; *Smith v. Pfluger,* 126 Wis. 253, 262, 105 N. W. 476; *Wetutzke v. Wetutzke,* 158 Wis. 305, 148 N. W. 1088; *Sedgwick v. Blanchard,* 164 Wis. 421, 424, 160 N. W. 267, and cases there cited; *Guardianship of Thienhaus,* 175 Wis. 526, 532, 185 N. W. 531.

We are satisfied, however, that the record does not support or warrant any such theory.

The testimony is all to the effect that when the quitclaim deed and note to Mrs. Pasternick were executed and the $500 in cash paid to Joseph Pasternick on Saturday afternoon, July 22d, the *Dunn* judgment was not within the contemplation of the parties as being part of the transaction; the provisions of the only writing purporting to give the terms of the contract, viz. the quitclaim deed, clearly excluded it; the testimony of the only witnesses on the trial present on July 22d, Okoneski and *Zell,* expressly deny it; the existence of the judgment was not discovered until Okoneski examined the record on Monday morning, July 24th,

and then informed *Lutz* and *Zell;* and finally, there is no
evidence that *Lutz, Zell,* and the Pasternicks met again after
the Saturday afternoon to make a new or modified agree-
ment to include the *Dunn* judgment in the liabilities to be
assumed by *Lutz* and *Zell.*

Other and surrounding circumstances clearly negative the
making of any arrangement such as was found by the trial
court to have been made. *Lutz* and *Zell,* in full considera-
tion for obtaining immediate title and possession of the
farm and personal property, were to pay certain specified
debts aggregating the amount mentioned in the quitclaim
deed; to pay, and they did pay, Joseph Pasternick $500 in
cash; and to give, and they did give, their $1,000 promissory
note to Mrs. Pasternick. This note was, on Monday, July
24th, pledged by Mrs. Pasternick at the Mosinee State Bank
as collateral on her new note then given to the bank.· If
*Lutz, Zell,* and the Pasternicks on Monday in fact had so
materially altered the arrangements of Saturday as to now
add such a substantial additional obligation on the part of
the one and such a substantial reduction of the other's debt,
it is more than strange and without explanation why no ef-
fort was made to have a new writing showing this change
and a return of the $500 cash payment or a reduction in the
amount of the note to Mrs. Pasternick. Furthermore, the
testimony is that the deed was not recorded and was kept
all the time by another creditor of Pasternick and by him
turned over to Okoneski, who produced it on the trial.
While it is true that the *Dunns* testify that they saw the
quitclaim deed in *Lutz's* possession and read it, yet if they
did so read they could not but have seen that it expressly
provided that *Lutz* and *Zell* should pay only certain obliga-
tions of Pasternick and those being other than the *Dunn*
judgment.

From the record we are satisfied that there is no sufficient
proof of any agreement between the parties interested in

the land contract whereby *Dunn's* judgment was to be paid in full by *Lutz* and *Zell* or whereby the right to foreclose the land contract was extinguished.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings.