MILWAUKEE COUNTY, Appellant, vs. OCONTO COUNTY, Respondent.

*September 10—October 8, 1940.*

For the appellant there was a brief by *Herbert J. Steffes,* district attorney of Milwaukee county, *O. L. O'Boyle,* corporation counsel, and *Henry S. Reuss,* assistant corporation counsel, and oral argument by *Mr. Reuss.*

*Harold W. Krueger,* district attorney of Oconto county, for the respondent.

NELSON, J. The facts are not in dispute. Charles Soukup was born in Oconto county and continuously resided there until early in October, 1936, when he removed to Milwaukee county. He was married and had one child of tender years. During the spring and summer of 1936, he worked for two different farmers and earned a dollar a day. In

January, 1936, his wife became ill and he was told that she had tuberculosis. He obtained an order from the county judge admitting her to the county sanatorium. She remained there three days and it was found that she did not have tuberculosis. In September, his wife again became ill and consulted a doctor. Soukup ceased working and stayed at home that he might take care of his wife and child and do the housework. On September 15, 1936, he applied for and was given relief in the form of a grocery order for $6, and on October 1, 1936, he was given a similar order and a forty-nine-pound sack of flour. The value of the relief given by Oconto county was about $15. During the month of September he again applied to the county judge for an order permitting his wife to be admitted to Hickory Grove sanatorium, a county institution, as a charge of Oconto county. She was admitted to said sanatorium for purposes of observation. She remained in the sanatorium from October 2, 1936, to December 2, 1936. Shortly after she was admitted to the sanatorium Soukup and his child went to Milwaukee to reside with a brother-in-law who offered to take care of the child and who in fact rendered support as a charity to Soukup and his child, and later on to Soukup's wife, until early in March, 1937, when Soukup succeeded in obtaining employment in Milwaukee. At the time Soukup was given relief by Oconto county in September, 1936, he had no property except some household furniture and a Model T Ford. The household furniture was disposed of before he went to Milwaukee and the automobile was disposed of in August, 1937. His railroad fare to Milwaukee was paid by his father. He first applied for and was given aid by Milwaukee county on November 6, 1937.

The commission concluded that the care given Mrs. Soukup in the Hickory Grove sanatorium, standing alone, did not constitute such pauper support as would prevent

Soukup from losing his legal settlement in the town of Spruce, Oconto county, because the principal object of tuberculosis sanatoria is to protect the public from the spread of the disease and that the cure of the individual is of secondary consideration. The commission further found that since Mrs. Soukup did not have tuberculosis her care in the sanatorium at the expense of Oconto county should be disregarded in determining Soukup's legal settlement. The commission further found that the support rendered to Soukup and his child by his brother-in-law in Milwaukee was not in the nature of pauper support because at the time he left Oconto county he had no status as a pauper. The commission apparently so found because the relief granted by Oconto county was so small and was made necessary because of his wife's illness.

If the relief granted to Mrs. Soukup as a county charge which continued until December 2, 1936, amounted to pauper support to Soukup, he could not, under the law, lose his legal settlement in Oconto county or gain a legal settlement in Milwaukee county until one year had elapsed after December 2, 1936.

Sec. 49.02 (4), Stats. 1937, so far as is presently material, provided:

"Every person of full age who shall have resided in any town, village or city in this state one whole year shall thereby gain a settlement therein; but no residence of a person in any town, village or city *while supported therein as a pauper* . . . shall operate to give such person a settlement therein."

Sec. 49.02 (7), Stats. 1937, provided:

"Every settlement when once legally acquired shall continue until it be lost or defeated by acquiring a new one in this state or by voluntary and uninterrupted absence from the town, village or city in which such legal settlement shall have been gained for one whole year or upward; and upon acquiring a new settlement or upon the happening of such

voluntary and uninterrupted absence all former settlements shall be defeated and lost."

The appellant contends that where public relief is given to a wife or child of a person whose legal settlement is in question, such relief or support should be considered as having been given to such person himself, and that the care given to Mrs. Soukup, at the expense of Oconto county upon Soukup's application to the county judge, was such support to Soukup as would prevent his losing his legal settlement in Oconto county or gaining a legal settlement in Milwaukee county unless a full year elapsed after Mrs. Soukup left the sanatorium and Oconto county's relief ceased. 48 C. J. p. 477; *Norwich v. Saybrook* (1824), 5 Conn. 384; *Winterport v. Newburgh* (1886), 78 Me. 136, 3 Atl. 48; *Tauton v. Middleborough* (Mass. 1846), 12 Metc. 35; *Oakham v. Warwick* (Mass. 1866), 13 Allen, 88.

It is clear, in our opinion, that care rendered to Mrs. Soukup by Oconto county amounted to pauper support rendered to her husband at a time when he was an indigent and prevented his losing his legal settlement in Oconto county prior to December 2, 1936. There can be no doubt that Soukup applied to the county judge for the purpose of having his wife cared for in the county sanatorium at the expense of Oconto county and that such care was given to her at the expense of the county. But the commission and the circuit court concluded that care and support rendered to a poor person in a county tuberculosis sanatorium is not pauper support within the meaning of sec. 49.02 (4), Stats., because the principal purpose of such institutions is to segregate tubercular patients so as to protect the public from the spread of the disease, and because the cure of the individual is of secondary consideration. In our opinion, that conclusion is not sound. A reading of ch. 50, Stats., strikingly reveals that the prime purpose of the establishment of state

and county sanatoria is to cure patients afflicted with tuberculosis, and that the protection of the public from the spread of the disease is more or less secondary. Sec. 50.01 (1), Stats., provides:

"(1) *Purpose.* The Wisconsin State Sanatorium and the Northern State Sanatorium are established and shall be maintained and operated for the treatment of persons afflicted with pulmonary tuberculosis, *especially in its incipient stages."*

Sec. 50.02 (1), Stats., in part, provides:

"(1) Any person affected with pulmonary tuberculosis *in the incipient or slightly advanced stage* may be admitted to either of said institutions, but preference shall be given to those suffering from the disease *in the incipient form."*

Sec. 50.07 (1), Stats., provides in substance that any person suffering from tuberculosis may be received into a county institution and cared for upon payment of a rate which shall not exceed the actual cost of maintenance therein, and any person who presents symptoms of tuberculosis calling for careful observation in order to make a diagnosis may also be admitted.

Sec. 50.07 (2), Stats., provides:

"Any such person who is unable to pay for his care may be admitted and maintained in such institution at the charge of the county *in which he has his legal settlement,* pursuant to subsection (2) of section 50.03. Such maintenance shall include necessary traveling expenses including the expenses for an attendant when such person cannot travel alone, necessary clothing, toilet articles, emergency surgical and dental work, and all other necessary and reasonable expenses incident to his care in such institution."

There is a decided difference between a tuberculosis sanatorium which cares at public expense for a person who voluntarily enters it and a contagious-disease (or isolation)

hospital which cares for a person whose entry is ordinarily involuntary, for the purpose of protecting the public from the spread of some virulent and contagious disease.

*Rolling v. Antigo*, 211 Wis. 220, 248 N. W. 119, involved a controversy between the city of Antigo and the town of Rolling as to the liability for the support of one Vanderhei and his family. The facts in that case were that during the year 1929 and 1930, Vanderhei had a legal settlement in the city of Antigo. On December 30, 1930, he removed to the town of Rolling. During the month of October, 1931, Vanderhei, as a poor and indigent person, applied to the mayor of the city of Antigo for aid from the city. At that time Vanderhei's legal settlement was still in the city of Antigo. He and his family were given relief during the months of October, November, and December, 1931, and January and February, 1932, in the form of wood and groceries amounting to $34.01. Such disbursements were made from the funds of the community welfare association, which was a charitable organization supported both by private donations and by appropriations made by Langlade county. Thereafter, relief was granted to Vanderhei and his family by the town of Rolling, and recovery from the city of Antigo was sought on the theory that Vanderhei's legal settlement at the time such relief was given was in the city of Antigo. The trial court held that the furnishing of relief to Vanderhei by the welfare association did not constitute support as a pauper within the meaning of sec. 49.02 (4), Stats. Upon appeal to this court the judgment of the trial court was reversed. It was held that when Vanderhei applied for relief from the city of Antigo, the furnishing to him of relief by the welfare association pursuant to the request of the mayor of Antigo, amounted to support as a pauper, which prevented Vanderhei acquiring a legal settlement in the town of Rolling. It was said (p. 225) :

"While it may in some cases be material, the circumstance that the aid was furnished by a voluntary organization is not controlling. The question is not where the support came from, but on what ground and under what circumstances it was furnished." Compare *Coffeen v. Preble,* 142 Wis. 183, 125 N. W. 954; *Green Lake County v. Leon,* 190 Wis. 166, 208 N. W. 943.

In *Cleveland v. Industrial Comm.* 232 Wis. 147, 286 N. W. 558, it was contended that paying to the wife and children of an alleged pauper a mother's pension, pursuant to sec. 48.33, Stats., amounted to pauper support. The court, however, did not determine that question as it was not necessary to the decision.

It is our conclusion that the treatment and care rendered to Mrs. Soukup during the months of October and November, in a county sanatorium, at the expense of Oconto county, upon the application of her husband, he being a poor and indigent person, having shortly before received pauper relief from Oconto county, fulfils every requirement of pauper support, and that a full year's absence from that time by her husband, the head of the family, without pauper support, was necessary in order that his legal settlement in Oconto county be lost, or a new legal settlement in Milwaukee county acquired. From December 2, 1936, to November 6, 1937, was less than a year.

Another contention is made by the appellant to the effect that at the time Soukup left Oconto county and went to Milwaukee county, his status was that of a pauper, he having received relief on September 15th and October 1st, from Oconto county, and that being charitably supported by his brother-in-law until March, 1937, amounted to a continuance of pauper support. In *Ellington v. Industrial Comm.* 225 Wis. 169, 175, 273 N. W. 530, where the person whose legal settlement was in question, was supported principally by his father-in-law during the year in question, the court

discussed at considerable length the effect of support rendered by those legally obligated to support a certain person and support rendered by those not so obligated. The court said:

"It may well be that, where one already has such a status [pauper status], a different conclusion may be warranted by the facts of a particular case. It was held in the *Rolling Case, supra,* that one having the status of a pauper, who was supported by a voluntary charitable institution, was being supported as a pauper in the statutory sense although he did not receive his aid from the public authorities."

In our view, it is unnecessary to determine whether the conclusions of the industrial commission and the trial court, that the support rendered to Soukup by his brother-in-law did not amount to pauper support, were erroneous.

It is contended by the respondent that the finding of the commission "that Charles Soukup lost his legal settlement in the town of Spruce, Oconto county, by absence therefrom between October 1, 1936, and November 6, 1937, without receiving pauper support" is a true finding of fact which, if supported by the evidence, cannot be disturbed. We consider that that so-called finding of fact is a determination and conclusion of law which may be disturbed and should be disturbed if grounded upon an erroneous view of the law. Compare *Tesch v. Industrial Comm.* 200 Wis. 616, 229 N. W. 194; *Weyauwega v. Industrial Comm.* 180 Wis. 168, 192 N. W. 452; *Badger Furniture Co. v. Industrial Comm.* 200 Wis. 127, 227 N. W. 288, and numerous other cases in which the law of those cases has been followed.

*By the Court.*—Order reversed, and cause remanded with directions to reverse the order of the industrial commission.