ELLISON and others, Respondents, vs. STRAW and another, imp., Appellants: NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Garnishee, Respondent.

*October 20—November 17, 1903.*

(1–3, 6) *Life insurance: Surplus accumulations, when a debt to assured: Garnishment: Exemption in favor of married woman.* (4) *Appeal: Findings: Presumptions.* (5) *Notice of issue on garnishee's answer: Renewal as to substituted answer.*

1. Where a life insurance policy dated September 19, 1885, provided for payment of the accumulated surplus upon the completion of a tontine period of fifteen years, said period expired with the close of the 18th day of September, 1900.
2. Where the accumulated surplus upon a life insurance policy is payable to the assured, at his option, upon the completion of a tontine period, without the consent of any other person named as beneficiary, and is not payable at all in the event of the death of the assured before the completion of said period, the liability to pay such surplus, when such liability arises, is a debt owing to the assured, and the subject of garnishment as such.
[3. Whether the exercise of the option of the assured, in accordance with the policy, to have such accumulation paid to him in cash, is such a condition precedent to absolute liability to him that garnishment would not lie in its absence, not determined.]
4. In support of a finding of the trial court that said accumulation had become payable absolutely, it will be assumed, in the absence of any exception to such finding and of any bill of

exceptions containing the evidence, that the assured took all
steps legally necessary to make the liability absolute.

5. Notice of issue on the answer of a garnishee need not be re-
newed after the service of a substituted answer setting up, in
the main, the same facts.

6. Although the wife of the assured is named as the beneficiary in
a life insurance policy, the accumulated surplus thereon,
which is payable absolutely to the assured at the expiration of
a tontine period if he survives that period and the policy is
then in force, is not exempt from the claims of his creditors
under sec. 2347, Stats. 1898.

APPEAL from a judgment of the superior court of Milwau-
kee county: J. C. LUDWIG, Judge. *Affirmed.*

Action of garnishment. Summons served on *Northwestern
Mutual Life Insurance Company,* as garnishee, September
19, 1900. Answer by garnishee, and issue thereon, and trial.
Defendant *Alonzo W. Straw* insured his life in the garnishee
company on September 19, 1885, $15,000, by policy payable
to his wife, *Amelia E. Straw.* The policy was so-called semi-
tontine, whereby it was agreed that the tontine period should
be fifteen years; that during that period no dividends should
be payable; that on the expiration of the tontine period there
should be payable a sum representing the profits of the policy
from year to year during that period, and in addition the so-
called tontine gains resulting from the division amongst
policies of that class of earnings distributable to other policies
which should lapse in the interval. The policy provided that
such sum should be payable to "the said insured or his as-
signs, without the consent of any other person named within
as beneficiary," in the manner following, at insured's option:
First, in cash; second, by way of annuity in payment of there-
after recurring premiums upon the same policy; third, in the
purchase of a new full-paid policy; fourth, in cash, in con-
nection with the surrender value of the rest of the policy;
and, fifth, in connection with the surrender value of the rest
of the policy, in the purchase of a new paid-up policy; but,
if no notice of election were given by the assured within sixty

days, then the sum was to be applied in the second manner above described, namely, as an annuity fund out of which to pay premiums.

The court found that on the 19th day of September, 1900, the garnishee was indebted to *Alonzo W. Straw* for such tontine dividends in the sum of $3,802.47, presently and absolutely due; that at that time *Alonzo Straw* was largely indebted in excess of any property and was insolvent. Judgment was accordingly rendered against the garnishee for that sum, which it paid into court, and which by a subsequent order was directed to be paid over to the plaintiffs unless the defendants took an appeal from the judgment, accompanied by a *supersedeas* undertaking, within the time limited. This they did not do, and the money has been accordingly paid over to the plaintiffs. This appeal is taken from judgment against the garnishee. No bill of exceptions has been settled.

For the appellants there were briefs by *Turner, Pease & Turner* and *James H. Stover,* and oral argument by *W. J. Turner.*

*William Kaumheimer,* for the respondents *Ellison.*

*Charles E. Dyer,* for the garnishee respondent.

Dodge, J. The appellants' assault upon the judgment is predicated upon two propositions: First, that there was no debt due from the garnishee to *A. W. Straw* at the time of the service of the garnishee summons, to wit, September 19, 1900; secondly, that any such debt was exempt from seizure for debts of either *Mr.* or *Mrs. Straw.*

1. The first proposition is that the so-called tontine dividend accumulation had not become due absolutely on the 19th day of September, for the asserted reason that the tontine period was not completed until that day had passed; hence, if *Straw* had died on that day, the dividend accumulation would never have become payable. With this contention we cannot at all agree. The policy did not provide that this

payment should be made upon condition that *Mr. Straw* should be alive and the policy in force for fifteen years *after* the day of its date, September 19, 1885. It did provide that "the tontine period shall be fifteen years," and that upon the completion of the tontine period these accumulations should be paid to the assured in the manner described in the statement of facts. There can be no question that the day on which the policy was written was a part of this tontine period. The policy was then in force and operative as fully as ever afterwards. Hence one year of the tontine period expired with the termination of the 18th day of the following September, and correspondingly the fifteen years expired with the close of the 18th day of September, 1900. To hold that it included the 19th day of September of that year would obviously require the policy to be in force for fifteen years and one day. We can entertain no doubt that the time when this payment might have been demanded had been reached on the 19th day of September, 1900, when the garnishee summons was served.

Next it is insisted that the liability of the company for these tontine dividend accumulations is not a debt to *Alonzo W. Straw.* The only support for this contention is apparently that it arises out of one of the provisions of the policy of insurance, in which *Mrs. Amelia E. Straw* is named as beneficiary. But she is named merely as beneficiary of the life insurance. The provision for payment of the tontine dividend accumulations is that:

"Upon completion of the tontine dividend period, . . . the said insured or his assigns, without the consent of any other person named within as beneficiary, if any, shall have the option either: *First,* to withdraw in cash the accumulated surplus apportioned by the company to this policy," etc.

We cannot feel justified in attempting to state at length reasons for so obvious a conclusion as that this agreement is one wholly with the assured, and over which he has full

control. That sum was not payable at all in the event of his death before the expiration of the tontine period. It therefore was nothing in the nature of life insurance, but, on the contrary, was most clearly an agreement to pay to him a computable sum upon certain contingencies. The fact that it is contained in an instrument which also promises and agrees to pay to *Mrs. Straw* a certain sum upon his death in no wise tends to vary this result. *Miller v. Campbell,* 140 N. Y. 457, 462, 35 N. E. 651; *Tennes v. N. W. Mut. L. Ins. Co.* 26 Minn. 271, 3 N. W. 346.

But again it is insisted that no absolute debt existed to the defendant *Alonzo W. Straw* unless it was shown that he had exercised his election that the accumulation be paid to him in money, instead of being applied by the insurance company either to provide an annuity for future premiums on this policy, as it was agreed that it should be if he exercised no election within sixty days, or to the purchase of other forms of insurance. We shall not deem it necessary to decide whether the exercise of *Straw's* election so constituted a condition precedent to the absolute liability to him that garnishment would not lie in its absence. It suffices for the determination of this contention by the appellants that the trial court has affirmatively found that at the time of the service of the garnishee summons the accumulation had become payable absolutely. In support of this finding of fact, it must be assumed that any steps legally necessary to its correctness were established by the evidence. Appellants have seen fit to come here without exception to the findings, and without a bill of exceptions to inform us of the proofs. It is not impossible that there may have been definite proof of the exercise by *A. W. Straw* of the election vested in him by the policy, and of the making of a demand for this sum. If such facts were not established, and were necessary to the ultimate fact found by the court, appellants should have re-

served exception to that finding and brought the evidence up on this appeal.

In this connection it is urged that both the original answer of the garnishee and a substituted answer interposed four months later, in pursuance of a stipulation that such later answer might be substituted for the original one, declare that no election or demand had been made by *A. W. Straw.* To the original answer the plaintiffs responded by a formal statutory notice of issue, but served none such after the service of the substituted answer. Of course, the service of the notice of issue raised an issue on all facts asserted in the garnishee's answer, and evidence might have been offered on either side thereof, but in the absence of any such notice of issue the garnishee's answer is to be taken as true. It is claimed that, because such notice was not renewed after the service of the substituted answer, its allegations must be accorded conclusive effect. It has many times been held in this court that, when a complaint is amended after an answer thereto has been filed, that answer will stand as the answer to the amended complaint, unless it be withdrawn or a new one be filed. *Yates v. French,* 25 Wis. 661; *First Nat. Bank v. Prescott,* 27 Wis. 616; *Harris v. Wicks,* 28 Wis. 198; *Knips v. Stefan,* 50 Wis. 286, 289, 6 N. W. 877. No reason is apparent why the same rule should not apply to the situation here. Plaintiffs, having once notified the garnishee of their desire that the facts set forth in the garnishee's answer be made subject of proof, may well be deemed to have intended to stand upon that notice, although a new answer came in, in this case stipulated to be a mere substitution, which set forth in the main the same facts with some slight modifications. It is, of course, apparent from the record, even without a bill of exceptions, that the court and the parties both took this view upon the trial and assumed that issues of fact arose upon the garnishee's answer to be tried. Other-

wise no findings of fact would have been either necessary or proper. Besides, those findings declare in express terms that a trial was had. We cannot avoid the conclusion that this record makes plain that issues of fact existed upon which evidence might have been given and justified a finding either way, according to the evidence.

2. Claim of exemption from debts, whether of *Mr.* or *Mrs. Straw,* is predicated upon sec. 2347, Stats. 1898, the general purpose of which legislation was thoroughly treated in *Ellison v. Straw,* 116 Wis. 207. In compliance with the views there expressed, that statute must doubtless be given liberal construction for the protection, especially, of widows, in their right to receive insurance upon the life of a husband or other person. On the other hand, the inference is equally obvious of a legislative intent not to screen the husband in building up for himself a fund beyond the reach of his creditors. Life insurance is one thing, investment is another, but the ingenuity of the life insurance companies in formulating contracts which confuse the distinction has been active for generations. Pure life insurance has become rare, except with beneficial associations; but the gradations from that contract, with some slight provision for accumulation of dividends, to contracts where the accumulation is the predominant, if not even the exclusive, purpose, are almost numberless. Life insurance is a promise to pay a certain sum upon the death of the assured. *Tennes v. N. W. Mut. L. Ins. Co.* 26 Minn. 271, 3 N. W. 346; *Talcott v. Field,* 34 Neb. 611, 52 N. W. 400; *Shakman v. U. S. Credit System Co.* 92 Wis. 366, 66 N. W. 528. Doubtless the amount so payable may be augmented by accumulation of excessive premiums and their earnings in the hands of the company without destroying the essential character of the contract. When, however, we find, as frequently, a promise to repay a sum made up from a portion of the premiums and their earnings at a date certain in the lifetime of the assured, we have only a contract

such as a savings bank may as well make. *Uhlman v. New York L. Ins. Co.* 109 N. Y. 421, 430, 17 N. E. 363. Whether such a fund, if payable to a married woman, is life insurance, within the terms of sec. 2347, and exempt from debts of either the husband or wife, in absence of intent to defraud creditors, we need not decide, nor perhaps question, in this case. See *Talcott v. Field, supra; Studebaker Bros. Mfg. Co. v. Welch,* 51 Neb. 228, 70 N. W. 920. We have already shown and declared that the particular provision now under consideration is in no wise for the benefit of *Mrs. Straw.* The fund is by the terms of the policy as absolutely the property of and payable to *A. W. Straw* as would be an accumulation in a savings bank or building and loan association. It is not "made payable to a married woman," or to any trustee for her, within the terms of sec. 2347, and therefore is not protected by the further provision that insurance so payable shall be free from the claims of creditors.

We conclude that the record discloses no error of the trial court in adjudging liability upon the garnishee.

*By the Court.*—Judgment affirmed.

MARSHALL and SIEBECKER, JJ., took no part.