GUARDIANSHIP OF THIENHAUS.    [Two appeals.]

*November 18—December 13, 1921.*

*Contracts for benefit of third person: Validity: Insurance: Agreement in divorce proceedings: Son of parties as beneficiary: Gifts from guardian to ward.*

1. An agreement made between two persons for the benefit of a third, based upon a sufficient consideration, is enforceable by such third person.
2. In an action to determine the ownership of deferred dividends accruing under a tontine life insurance policy, it appeared that in a divorce action between the insured and his wife, the beneficiary named in the policy, they stipulated that the insured should continue to pay the premiums on the policy for the benefit of their son so as to provide for him a good and suitable sum for his education and support, pursuant to which stipulation the divorce decree provided that the policy was to be continued until its maturity and at that time applied for the benefit of the infant son of the parties, followed by an indorsement on the policy by the secretary of the company that "the bonds provided for by policy . . . shall be delivered to the insured's son," and further, that the insured, who was appointed, and acted as, guardian of said son, filed an inventory of his ward's property, in which he stated, among other things, that the property of his ward consisted of the policy in question. *Held,* that the son acquired a right to the deferred dividends by virtue of the agreement entered into between the insured and the beneficiary in the divorce proceedings.
3. Advancements of occasional sums by a guardian to his ward (in this case father and son) were not intended as payments from the estate, but as gifts from father to son.

TWO APPEALS: one from a judgment of the circuit court for Milwaukee county, OSCAR M. FRITZ, Circuit Judge; the other from a judgment of the county court of Milwaukee county, M. F. SHERIDAN, Judge. *Both judgments affirmed.*

On January 26, 1903, the Mutual Life Insurance Company of New York issued to *Carl O. Thienhaus* a deferred dividend tontine life insurance policy, payable in fifteen annual premiums, by which the insurance company promised to deliver to Florence Thienhaus, his wife, five gold bonds,

each for the sum of $1,000, payable in twenty years from date, bearing interest at five per cent. per annum.

*Thienhaus* and his wife were divorced in July, 1908. It was stipulated and agreed between them that *Thienhaus* should continue to pay the premiums on the life insurance policy in question for the benefit of their son, *Harold F. O. Thienhaus,* pursuant to which stipulation the divorce decree contained this provision:

"The policy for $5,000 is to be continued until its maturity, and at that time to be applied for the benefit of the infant son of the parties hereto, *Harold F. O. Thienhaus."*

The policy contained this provision with reference to assignments thereof:

"The company declines to notice any assignment of this contract until the original assignment, or a duplicate or certified copy thereof, shall be filed in the company's head office. The company will not assume any responsibility for the validity of an assignment."

In 1908 the following indorsement was made on the policy:

"By mutual consent, and upon request, the bonds provided for by policy No. 1316838 shall be delivered to the insured's son, *Harold F. O. Thienhaus,* if living; if not, to the insured's executors, administrators or assigns.

"W. J. EATON, Secretary."

On October 18, 1911, *Thienhaus* was appointed guardian of his son. On February 27, 1912, he filed an inventory of his ward's property in which he said:

"The property of the above *Harold F. O. Thienhaus* consists of an endowment life insurance policy, due 1917, in the Mutual Life Insurance Company of New York, policy No. 1316838. The guardian, *Dr. C. O. Thienhaus,* makes the payments on this life insurance policy, the premiums now amounting to $458.05, as long as his income allows it. The value of said policy in 1917, in case *Dr. C. O. Thienhaus* should be living at that time, amounts (including deferred dividends) to about $8,000–8,400."

In an annual account filed February 20, 1912, it is again stated that the property of the ward consists of said insurance policy; that the value thereof, including deferred dividends, in 1917 will be between $8,000 and $8,400.

At the time of the maturity of the policy the guardian, by permission of the court, had borrowed for the benefit of the ward the entire loan value of the policy. Upon maturity the accumulated deferred dividends amounted to $2,006.11. For this sum the insurance company sent a check, payable to *Thienhaus*, guardian, or *Thienhaus* as guardian, but the precise manner in which the check was drawn does not appear. *Thienhaus* was told by some one connected with the trust company, which was surety on his bond as guardian, that this money belonged to him. He had the check cashed, receiving therefor two $1,000 bills. In 1918 he was interned as an alien enemy. Shortly prior to his internment he delivered one of these bills to one E. B. Rebholz and took his receipt therefor. He delivered the other bill to Paul D. Carpenter, Esq. When *Thienhaus* was interned as an alien enemy Mr. Carpenter did not know what to do with the money. He did not know whether it belonged to the ward or to *Thienhaus*. If it belonged to *Thienhaus* it was his duty to turn it over to the alien property custodian. Thereupon he filed a petition in the guardianship proceedings in the county court requesting direction as to the disposition of the money, upon which application a guardian *ad litem* was appointed for the ward. The county court ordered that it be turned over to the alien property custodian. The guardian *ad litem* appealed from such order to the circuit court for Milwaukee county. *Thienhaus* intervened in the circuit court and was made a party to the proceedings in his personal capacity. The circuit court entered judgment reversing the order of the county court and adjudging that the guardian, *Carl O. Thienhaus*, account for the sum of $2,006.11 in his report as guardian of said minor, to the county court of Milwaukee county. From such judgment *Carl O. Thienhaus* appeals.

While the appeal just mentioned was pending in the circuit court and before the decision of the court thereon, proceedings were instituted by the guardian *ad litem* in the county court to compel the guardian to file his final account, the said guardian having filed his resignation of the trust, which, however, had never been accepted. That proceeding also involved the question whether the deferred dividends in dispute belonged to *Thienhaus* personally or whether they belonged to his ward. The county court in that proceeding found that the item of $2,006.11, deferred dividends, belonged to the ward and ordered *Thienhaus* to account therefor, to which finding and order *Thienhaus* excepted.

*Thienhaus* in his final account also claimed an item of $1,000, the same being for disbursements to the amount of $100 each year for ten years which he claimed he paid out for the benefit of his ward. This item of his account was also disallowed by the court, to which the guardian excepted.

From the order of the county court stating the final account, the guardian, *Carl O. Thienhaus,* appealed.

The cause was submitted for the appellant *Carl O. Thienhaus* on a brief signed by *Roehr & Steinmetz,* attorneys, and *Julius E. Roehr,* counsel, all of Milwaukee, and for the respondent on that of *Ernst von Briesen* of Milwaukee, guardian *ad litem.*

OWEN, J. The main questions involved on these appeals being identical, they were ordered consolidated and argued together, and they will be disposed of in one opinion.

The principal question presented is whether the deferred dividends accruing under the life insurance policy belonged to the insured, *Carl O. Thienhaus,* or to his son, the ward. While it was held in *Ellison v. Straw,* 119 Wis. 502, 97 N. W. 168, pursuant to the terms of an insurance policy there under consideration, that the deferred dividends belonged to the insured and not to the beneficiary, it does not necessarily follow that in this case, as between the insured

and his wife, the original beneficiary, the deferred dividends belonged to him, because of the material difference in the provision of the policy here and the one there considered affecting such deferred dividends. The insurance policy considered in *Ellison v. Straw, supra,* provided that upon the completion of the tontine dividend period "The said insured or his assigns, without the consent of any other person named within as beneficiary, if any, shall have the option either: First, to withdraw in cash the accumulated surplus apportioned by the company to this policy," etc., while here the only provision affecting deferred dividends is as follows: "The only distributive share of surplus shall be apportioned to this contract at the expiration of fifteen years from date, provided the premiums are duly paid and the insured is then living, and shall then be paid in gold coin." It will be noted that in the policy we are now considering the company agreed to apportion the distributive share of surplus to the contract "at the expiration of fifteen years from date." There is no express provision in the contract which indicates whether such distributive share of the surplus belongs to the insured or to the beneficiary, while in the policy considered in *Ellison v. Straw, supra,* it was provided that the insured, "without the consent of any other person named within as beneficiary," shall have the options permitted to be exercised with reference to the accumulated surplus which should be apportioned by the company to the policy. For this reason the *Ellison Case* is not necessarily controlling upon the question whether, under the terms of the policy in this case, the deferred dividends or unapportioned surplus accrued to the benefit of the insured or the beneficiary. But whether such deferred dividends belonged to the insured or to the beneficiary under the terms of the policy need not be decided, for the conduct of each has been such as to vest in the son whatever interest either of them had in the policy.

It appears from the findings of the circuit court that in the divorce proceedings between *Carl O. Thienhaus* and his wife

there was a stipulation, as well as findings of fact and judgment, in which the following appears:

"That the defendant (*Carl O. Thienhaus*) is to continue to keep up and maintain, according to the conditions thereof, all the regular payments of premium due thereon of the life insurance policy heretofore taken out by him on his life and now held by him for the following uses and purposes, to wit: (a) The policy 1280780 in the Mutual Life Insurance Company of New York for $5,000 is to be continued until maturity and at that time to be applied for the infant son of the parties hereto, *Harold Friedrich Otto,* so as to provide for him a good and suitable sum for his education or support."

The circuit court further found that by mutual consent the policy here in question was substituted for policy No. 1280780 mentioned in said stipulation, findings, and judgment.

Now what was the effect of the provision above quoted which appears in the judgment of divorce? It will not be contended that the circuit court had jurisdiction in the divorce proceedings to divest the husband of property and vest title thereto in the children. Neither did it have authority to divest *Thienhaus* of any interest he might have had in the insurance policy and vest title thereto in the son, *Harold F. O. Thienhaus.* But it was competent for Mr. and Mrs. Thienhaus, the insured and the beneficiary, to agree that they would both turn their interests in such policy over to the son. This was an agreement made by the parents for the benefit of the son and enforceable by him. This is the effect of the stipulation made between the parents and filed in the divorce action. It was agreed that *Carl O. Thienhaus* shall make all the regular payments of premiums due on the policy until maturity, at which time the proceeds are to be applied "for the infant son of the parties hereto, *Harold F. O. Thienhaus,* so as to provide for him a good and suitable sum for his education or support." True, it is not stated in so many words that the proceeds of the policy are to be applied

for the infant son, but such is the evident intention of the parties. The provision is not that the son shall be substituted for the beneficiary. The agreement is that the insurance policy shall be "continued until maturity and at that time to be applied for the infant son of the parties hereto." This means the entire policy, or the entire proceeds of the policy. It is not limited to that portion of the policy to be paid to the beneficiary. The stipulation was followed by directions to the company resulting in the indorsement on the face of the policy signed by W. J. Eaton, secretary, set forth in the statement of facts; then followed the guardianship proceedings and the inventory of *Carl O. Thienhaus,* the guardian, and the insured named in the policy, from which it plainly appears that he regarded the son as the beneficiary of the entire proceeds of the policy; then comes the check to cover the deferred dividends, made payable to *Carl O. Thienhaus* as guardian; the manifest doubt which he had at that time as to whether these dividends belonged to him individually, and the further fact that he never, at any time, claimed to be the owner of such dividends. His testimony before the circuit court was to the effect that he did not know whether the deferred dividends belonged to him or not. From these facts we conclude that the son acquired an undoubted right to the deferred dividends by virtue of the agreement entered into between the insured and the beneficiary in the divorce proceedings. This was an agreement made between two persons for the benefit of a third based upon a sufficient consideration and enforceable by such third party. It therefore makes no difference whether under the terms of the policy the deferred dividends belonged to the insured or to the beneficiary, as the only two parties who were interested in the proceeds of the policy agreed that the same should be paid to the son.

Upon the appeal from the order of the county court the further question arises whether that court properly disallowed an item of $1,000 claimed by the guardian in his

final account, which item is made up of sums of $100 per year for ten years, and which it is claimed was expended from the guardian's estate for the benefit of the ward. The evidence in support of his claim rests solely upon the testimony of the guardian, who testified that he frequently gave *Harold* money for extras and contributed to a certain extent to his clothes, ties, etc. "I only made an approximate estimate of what I gave him during the course of a year; I think it really might have been more than that. I kept no record of it; I never thought it would come to that and I never claimed it neither; I think these amounts would aggregate $100 a year on the average, including trips that I had to make down there for the purpose of seeing him, etc. I first made up my mind to charge for these items in my guardianship account when I saw that my financial condition was such that I believed I owed it to myself." As to these items the county court found that they were occasional sums which were given to said minor as gifts from father to son. The testimony of the guardian clearly indicates that when such amounts were disbursed by him they were not intended as payments from the estate to the ward, but were gifts from father to son, and the county court very properly refused to allow the same.

*By the Court.*—The judgment of the circuit court is affirmed. The judgment of the county court is affirmed.