## Martin et al. v. Balis et al.

*Bertram I. De Young* and *B. Leon Brenner,* for plaintiffs.
*Arthur G. Dickson* and *Willis H. Satterthwaite,* for garnishees.

LEWIS, J., December 14, 1932. — The Mutual Life Insurance Company of New York (hereinafter referred to as "Mutual") and the Metropolitan Life Insurance Company (hereinafter referred to as "Metropolitan") have been summoned as garnishees in an attachment execution, whereby the plaintiffs seek to collect the amount of a judgment recovered against Samuel Balis and Daniel Balis. We have been asked to enter judgment on answers which have been filed by both garnishees to interrogatories propounded to them by the plaintiffs in the attachment proceeding.

The Metropolitan issued four policies of life insurance upon the life of Samuel Balis. Each of the policies designated his wife as beneficiary, without right

of revocation. It appears, by inference, that the four policies participate in the earnings of the company. They provide for four options in regard to dividends:

    (a) The insured may draw the dividends in cash; or

    (b) He may apply them toward the payment of premiums; or

    (c) He may leave them with the garnishees to accumulate, with interest; or

    (d) He may use them to purchase additional insurance.

Subsequent to the service of the attachment, dividends totaling $52.29 were applied on account of premiums due at the time of their declaration. A dividend of $8.54, which had been declared upon one of the policies, was, however, paid to Samuel Balis, he having elected to take cash.

The Mutual insured both of the defendants in the execution under individual policies of life insurance, payable to the respective wives of the insured, if living, and if not living, to the children of the insured, equally, and in the event of no children living, to the heirs, executors or administrators of the insured.

Dividends totaling $172.40 were declared by the Mutual upon the policies in question, and at the election of the insured, the dividends were applied toward the payment of premiums due at the time of such declaration, subsequent to the issuance and service of the writ of attachment sur judgment.

There was no agreement between the Mutual and the defendants whereby it was so directed to apply the dividends, but it was done each year at the election of the defendants.

The rule for judgment against both garnishees is for the amount of dividends credited or paid to the insured since the attachment was levied, and squarely raises the questions which we will hereafter discuss.

It is contended (although copies of the policies involved were not attached to the pleadings) that under the policies issued by both garnishees, the moneys in their possession, which are variously designated as refunds, surplus, incomes, abatements, rebates, dividends, excess of tenative or experimental premiums over net or mathematical premiums, overcharge of premium and actual cost of insurance, difference between level premium and adjusted losses and costs afterwards determined, are not in the common acceptation of the term to be regarded as dividends; but these moneys, which are either returned, rebated or credited to the policyholder's account, are exempt from attachment because of the provisions of the Act of June 28, 1923, P. L. 884.

Under the so-called level premium plan, each policyholder's share of the fund is ascertained. Before his next premium falls due he is advised of its amount. Ordinarily, under certain forms of life insurance policies issued, and particularly under the uniform policy provisions prescribed by The Insurance Company Law of May 17, 1921, P. L. 682, after the company determines annually the portion of the divisible surplus accruing on each policy, the owner of the policy has the right to have the dividend thus accruing paid in cash or applied toward the payment of premiums, or the purchase of paid-up additions to the policy, as the policyholder may elect: Com. v. Penn Mutual Life Ins. Co., 252 Pa. 512.

If the dividends paid or credited to the defendants by the garnishee life insurance companies were ordinary corporate dividends, representing a return upon an initial investment in the business of the garnishees, counsel for insurers frankly admits they would not be immune from attachment or seizure at the hands of the sheriff. If such be the character of these dividends, they come within the category of an ordinary debt, upon their declaration: 28 C. J. 166.

The various statutes of the State of Pennsylvania relating to the exemption of life insurance from the claims of creditors have been considered and dis-

cussed in a number of recent cases. The provisions of the Act of April 15, 1868, P. L. 103, were enlarged in 1915 (May 5, P. L. 253), and practically reënacted in 1919 (May 17, P. L. 207) and 1923 (June 28, P. L. 884), so that the rule now is that the "net amount" payable by the insurer under any contract made for the benefit of, or assigned to, the wife or children shall be exempt from the claims of creditors whether the right to change the beneficiary be reserved or not: Irving Bank v. Alexander et al., 280 Pa. 466; Weil v. Marquis, 256 Pa. 608.

The Pennsylvania statutes relating to the exemption of life insurance from the claims of creditors received interpretation in several lucid and instructive opinions by Kirkpatrick, J., of the District Court of the United States for the Eastern District of Pennsylvania, in the case of In re Lang, 20 F. (2d) 236, affirmed in 24 F. (2d) 254, and in the case of In re Rose, 24 F. (2d) 253. In answer to the contention of the trustee in bankruptcy that the exemption provided for by the Acts of 1919 and 1923 was limited to the money realized upon the policies as the result of the death of the insured, that the words "net amount payable" meant net amount payable upon the death of the insured, the learned court said: "We conclude that the effect of the acts of 1919 and 1923 was to exempt from the claims of creditors the cash surrender value of policies of the character referred to in those acts. There is nothing in the language of the statutes which would lead to a different conclusion. The argument for the trustee, based on the use of the words 'the net amount payable,' is not convincing. As the referee stated in his opinion, these words 'might be held to mean either the net amount payable after the death of the insured, or the net amount payable upon the surrender of the policies.' They are quite as applicable to the one as to the other, and simply mean that the fund exempted is that which arises after deduction of loans or other amounts properly due to the insurer:" 20 F. (2d) 239.

It is clear, from a careful analysis of the Pennsylvania statutes relating to exemption of life insurance policies and the judicial interpretation thereof, that the plain purpose of this entire body of legislation was to encourage men to insure their lives for the benefit of their families. Such exemption statutes should receive a liberal construction in favor of the debtor in order to advance the humane purpose of reserving to the unfortunate or improvident debtor or his family the means of obtaining a livelihood and preventing them from becoming a public charge.

While it is true that the language of Judge Kirkpatrick in the Lang case, supra, disconnected from the rest of his opinion, might lead to a conclusion that it was his interpretation that the various acts of the State of Pennsylvania intended to exempt all sums realizable upon policies at any time, that interpretation must be read in the light of the remaining portions, of his opinion and held to apply only to the situation there considered.

An interesting case, which construes the Mississippi statute exempting proceeds of insurance policies from liability for the debts of the insured, is Chattanooga Sewer Pipe Works v. Dumler, 153 Miss. 276, 62 A. L. R. 999. It was there held that a provision in a life insurance policy to indemnify the insured in case disability resulted from bodily injury or disease was a separate contract of indemnity, and that the proceeds of a policy for indemnity were not exempt from garnishment by judgment creditors of the insured under a statute exempting the proceeds of life insurance policies from liability for the debts of decedent.

It has been urged upon us with no little force that the dividends here at issue are a sum realizable upon the policies of insurance in the same sense as

is the cash surrender value, a sum which at certain times the insured may be in a position to withdraw; that the dividends are an incident of insurance and inextricably bound with it, and that if the law exempts cash surrender values the same protection should extend to dividends.

In the case under consideration, the moneys involved are in no proper sense "the net amount payable" under any policy of life insurance. It is true that they arise out of the provisions of a policy of insurance upon the life of the decedent, but they are payable under an arrangement wholly separate from the contract to pay a fixed sum upon the death of the insured, or upon termination of the policy for any other reason.

Ordinarily, dividends payable to the insured in his lifetime represent simply the return to the insured of such portion of the premiums paid as exceeds the financial requirements of the insurer. So the transaction, in so far as it relates to dividends, partakes of a character similar to that of increment upon investment by the insured. Such dividends, being substantially an excess of premiums paid, remain the property of the debtor. The moneys so advanced by the insured belong to the debtor and should be applied to the payment of his debts. The mere act of filtering it through the insurance company does not change its character so that it becomes the property of the defendant free and exempt from the claims of the insured's creditors. It seems clear that the moneys derived from dividends and not as a result of the primary obligation of the insurer to pay a specified sum of money upon the death of the insured or surrender of the policy remain the property of the insured, and not of the beneficiary who is protected by the exemption statutes. Such dividends as are payable in cash are, in our opinion, liable for defendant's debts: Talcott v. Field et al., 34 Neb. 611.

While the exemption statutes should receive a liberal interpretation, the reasoning by which the wording of our exemption acts has been held to include cash surrender values payable upon the termination of the relationship between insured and insurer cannot be said to require its extension to cash dividends distributable and payable to the insured during the life of the policy.

While our inclination is to construe our exemption statute liberally, for the protection especially of widows and dependents, the act, on the other hand, should not be so interpreted that it will be used as a screen or as a shield for the building up of a fund and placing the same beyond the reach of creditors. As was said in one case: "Life insurance is one thing, investment is another, but the ingenuity of the life insurance companies in formulating contracts which confuse the distinction has been active for generations. Pure life insurance has become rare, except with beneficial associations; but the gradations from that contract, with some slight provision for the accumulation of dividends, to contracts where the accumulation is the predominant, if not even the exclusive, purpose, are almost numberless. . . . Doubtless the amount so payable may be augmented by accumulation of excessive premiums and their earnings in the hands of the company without destroying the essential character of the contract. When, however, we find, as frequently, a promise to repay a sum made up from a portion of the premiums and their earnings at a date certain in the lifetime of the assured, we have only a contract such as a savings bank may as well make . . .:" Ellison et al. v. Straw et al., 119 Wis. 502, 97 N. W. 168.

If it be the intention of the legislature to exempt all interests of the insured, actual or potential, in an insurance policy, whether arising from dividends, cash accumulations or otherwise, it should be clearly manifested by an adequate statutory expression thereof. To extend it to include as exempt the cash dividend payment here involved would be to give the plain wording of the present

statute a strained construction and to stretch the language beyond a reasonable interpretation of the legislative intent.

The other fundamental question involves the right of the defendant insured to exercise the options given them in the life insurance policies, to apply the dividends toward the liquidation of the premiums payable under their policies over the protest of the attaching creditor. To state it differently: Is the interest of the defendant assured in the policy, actual or potential, of such character as to be subject to the claims of his creditors, assuming that they are not protected by our exemption laws?

The service of a summons in garnishment does not change, impair or interrupt the contractual relations existing between the defendant and the garnishee.

As was said by Mr. Justice Sadler in Austin-Nichols & Co., Inc., *v.* Union Trust Co., Garnishee, et al., 289 Pa. 341: "When a creditor makes use of attachment process, he thereby treats the contract by which the garnishee acquired possession of the fund in his hands as valid."

The question, therefore, is whether, in a case where, under the terms of its contract with defendant, the garnishee is obliged to accord the insured the option of designating the mode of application of the dividends, an attaching creditor has the right to compel such an election as would place the funds within his grasp. We think this right, given to the defendant insured under the terms of the policy, is one personal to the insured, which he alone may exercise, and the attaching creditor has not the right to compel a modification of the contract between defendant and the garnishee by depriving the defendant of his contract options.

"When the right to receive the money is in existence, the demand then exists, and that demand would be subject to attachment; but the right to determine [whether or not the liability of the insurer should be created] is not such a demand. The election [by the insured] preceded the existence of a cause of action against the defendant, as it could not have discharged its obligation until the legal holder of the policy had exercised the right to elect:" Columbia Bank et al. *v.* Equitable Life Assurance Society, 79 App. Div. 601, 610, 80 N. Y. Supp. 428.

In this connection reference may also be made to the case of Association *v.* Laib, 13 Pa. C. C. 658, where it was held that the withdrawal value of a premium on a perpetual policy of insurance, payable in case of cancellation by the insured, which policy the insured did not offer to surrender, and which was still in effect, was not subject to attachment.

The opinion of the court in Fleming's Estate, 217 Pa. 610, discussing the rights of creditors to compel the election of their debtor under or against the terms of a will, is instructive on the question before us.

The making of the election in the manner and form provided by the policy (the exact provisions of which are not before us) is an act dependent upon the volition of the assured. This court cannot compel the defendant to take the necessary steps in the exercise of the election, nor can it grant a judgment which renders the taking of the necesary action upon the part of the insured unnecessary: Farmers & Merchants Bank *v.* National Life Ins. Co. et al., 161 Ga. 793.

There was no debt due from the insurance company to the insured under the averments of the answers that could be reached at law by the process of attachment in the absence of an express election by the insured to withdraw the dividends in cash. The election to receive in cash was not made. It is not within our power or authority to bring to bear upon the principal debtor, the insured,

by attachment process or otherwise, any force to compel him to perform an act which he may not desire to perform, for the purpose of converting a contingency into an actual debt or liability on the part of the insurer. The insurer garnishee, under the terms of the policies, after the election on the part of the insured was exercised, properly applied the dividends toward the payment of premiums owing by the insured, thereby cancelling pro tanto any obligation to the insured which might otherwise have arisen on the part of the insurer.

We have not lost sight of the claimed injustice of permitting a debtor to use the accumulations upon his policies of life insurance in payment of the premiums due thereon, instead of in satisfaction of his debts. If such injustice requires correction, resort must be had to the legislature and not to the courts to compel the exercise of a right which is strictly personal to the contracting parties. In our opinion, no liability attaches to the garnishee companies for the amount of dividends properly applied on account of premiums due and owing to them by the insured.

As pointed out before, however, the answer of the Metropolitan reveals a payment to the insured defendant on June 8, 1932, in the sum of $8.54. We have concluded that the amount thus paid was not exempt from the attachment theretofore served upon the Metropolitan, since the attachment process bound all property belonging to the defendant.

The rule on the Mutual Life Insurance Company of New York to show cause why judgment should not be entered against it for want of a sufficient answer to interrogatories is discharged. The rule on the Metropolitan Life Insurance Company, garnishee, to show cause why judgment should not be entered against it for want of a sufficient answer to interrogatories is discharged. The court finds that the Metropolitan Life Insurance Company, one of the garnishees, had in its custody, possession and control the sum of $8.54 which was subject to the attachment process issued against it.