## SOUTH GEORGIA FUNERAL HOMES INCORPORATED et al. v. HARRISON, insurance commissioner.

No. 11340. OCTOBER 16, 1936. REHEARING DENIED DECEMBER 10, 1936.

*Hay & Gainey, Park & Strozier,* and *Orville A. Park Jr.,* for plaintiffs in error.

*Dave M. Parker, assistant attorney-general, Hendrix & Buchanan, Jeff A. Pope,* and *R. Arthur Bell,* contra.

HUTCHESON, Justice.   W. B. Harrison, insurance commissioner, brought a petition for injunction against South Georgia Funeral Homes Inc., and J. W. Park, J. I. Smith, and H. J. Belk, officers and employees of the corporation, to enjoin the selling of certain so-called option contracts, on the ground that such contracts were contracts of insurance and defendants were doing an insurance business without first having complied with the insurance laws of the State regulating such business.   The injunction was granted, and that judgment was affirmed by this court on writ of error. *South Georgia Funeral Homes Inc.* v. *Harrison,* 182 *Ga.* 60 (184 S. E. 875).   The present case arises by reason of a judgment against the defendants upon a rule for contempt against them for an alleged violation of the injunctive order of the court, because of the sale of certain contracts, one of which, attached to the petition for rule filed by Harrison, is as follows:

"Park's Plan Contract for Undertakers # 301.   In consideration of the sum of fifty dollars ($50.00) in hand paid to South Georgia Funeral Homes Inc., party of the first part, by J. T. Sellers, party of the second part, said party of the first part hereby agrees and binds itself to render and perform, or cause to be ren-

dered and performed, any and all usual services as an undertaker and funeral director which become necessary and are required in connection with the death and burial of party of the second part, or any one member of his family, whenever such services may be needed and are called for, including the embalming of the body, the conducting of the funeral, and services of a hearse, all within 25 road miles of the first party's place of business. For the same consideration party of the first part further agrees and binds itself to sell to party of the second part, or his representative, any casket, vault, burial clothing, and/or other merchandise then carried in stock by it for use in connection with any such funeral, at the actual cost thereof (including invoice, freight, and sales tax, if any), plus 10 per cent." The contract is signed by the South Georgia Funeral Homes Inc, by J. W. Park, Pres. The following was also attached to the petition for rule: "Received of J. I. Sellers the sum of $6.00 as the initial payment for a Park's Plan Contract with the South Georgia Funeral Homes Inc., for said company's services as an undertaker and funeral director, together with his application for such contract, same to be presented to said company by me. This Dec. 11, 1935. [Signed] J. W. Park."

The defendants demurred to the petition for rule, and answered admitting the sale of the contracts alleged, but denied that the sale of such contracts was in violation of the injunctive order of the court. They further alleged that the amount which the purchaser pays under the contract is no more than the reasonable cost of the service which the defendant corporation obligates itself to render. Attached to the answer as an exhibit was a note, a part of the contract quoted above, as follows: "Purchaser's Agreement. December 11, 1935. I promise to pay to the South Georgia Funeral Homes Inc., or bearer, for the balance on Park's Plan Contract No. 301, the sum of forty-four dollars ($44.00), payable at the rate of $1.00 per month from the date said contract is executed by said payee and delivered. The exercise of my privileges under said contract shall render the unpaid balance of this debt immediately due and collectible, at the option of the payee or holder hereof; and upon default in payment of any part hereof my rights under said contract shall thereupon be terminated; provided, however, that I shall be entitled to services under said

contract to the amount·actually paid thereon." This note was signed by J. T. Sellers. The case was submitted to the court upon the petition, the answer, and the admission of counsel for the defendants that a number of the contracts set out above had been sold, some for cash and some on the deferred-payment plan. The court overruled the demurrer and adjudged the defendants in contempt of court. The defendants excepted.

The question to be determined is whether the contracts now being sold are, to all intents and purposes, the same as those the sale of which had been enjoined; that is, whether they are contracts of life insurance. What constitutes life insurance and the dissecting of it into its elements is a problem that holds forth no prospect of absolute solution. Various definitions have been attempted. "The law however, is not fond of definitions, and these definitions are to be taken, perhaps, rather as statements of the learned men who make them, of the contract as they find it existing around them, than as strict definitions which contain every essential element without which the contract can not exist, and which exclude everything not necessary to its being." 37 C. J. 359, 360, citing State *v.* Citizens Ben. Asso., 6 Mo. App. 163. The Code of this State, § 56-901, declares: "A life-insurance policy is a contract by which the insurer, for a stipulated sum, engages to pay a certain amount of money if another shall die within the time limited by the policy. The life may be that of the insured or of another in the continuance of whose life the insured has an interest." Yet it has been held by this court that the Code definition was not exhaustive, and that a contract may be one of life insurance though payable in goods or services of value. *Benevolent Burial Asso. Inc.* v. *Harrison,* 181 *Ga.* 230, 238 (181 S. E. 829). It has been said that life insurance in its pure form is where "the members pay premiums which when invested would, if the member lived exactly the average life, produce the sum agreed to be paid. Those who do not reach the expected age gain, those who exceed the age lose, but in the long run there can not be either gain or loss." Eckersley *v.* Federal Life Assurance Co., 2 Ont. 1274, 19 Ont. 507. It was further said in that case, that "the policyholder takes his chances of being a gainer or loser, but the fundamental idea is investment." In Ellison *v.* Straw, 119 Wis. 502, 508 (97 N. W. 168), the court

said: "Life insurance is one thing, investment another," and that "pure life insurance has become rare, except with beneficial associations; but the graduations from the contract, with some slight provision for accumulation of dividends, to contracts where the accumulation is the predominant, if not even the exclusive, purpose, are almost numberless." It will thus be seen that no definite line of demarcation can be arbitrarily drawn, but each contract must be construed unto itself, together with evidence dehors the contract itself, in order to ascertain whether the particular contract under consideration is one of life insurance or otherwise. We think it can safely be said, however, that a contract of life insurance must contain an element of risk in so far as the particular individual contract is concerned. The contract now being sold by the defendants, and by reason of the sale of which this contempt proceeding arose, is one wherein the defendant corporation, for a fixed and definite sum in hand paid or payable in installments, agrees to render and perform or cause to be rendered and performed, for the purchaser or any one member of his family, certain funeral services, with the additional obligation to allow the purchaser to buy funeral merchandise in connection with the funeral, for a price definite and ascertainable. While the performance of the contract is contingent upon death, this in and of itself does not make it a contract of life insurance, nor does the fact that the fixed sum is payable in installments. There is nothing in the contract iself, nor is there any evidence, to show that the amount paid by the purchaser is less than the value of the funeral services contracted to be performed, or that there is any element of risk involved, either on the part of the purchaser or the defendant corporation. The contract on its face does not appear to be one of life insurance. The contract involved in the case out of which this contempt proceeding arose is a contract of life insurance in and of itself. While it is not always controlling that a contract does not on its face purport to be one of life insurance, such fact is controlling if nothing to the contrary is shown. There being no evidence in the present record to show that any element of risk is involved in the contracts under consideration, it does not appear that they are contracts of insurance, or that the sale of them violated the injunctive order of the court.

*Judgment reversed. All the Justices concur, except Atkinson, J., absent because of illness.*