GILKEY, Respondent, vs. TAX COMMISSION and another, Appellants.

*May 18—June 21, 1938.*

298

For the appellants there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

*Carlyle B. Wurster* of Merrill, for the respondent.

FAIRCHILD, J. The board of review, the commission, and the circuit court reached variant results in this case not because they differed as to the facts, but because they followed different theories of the law.

The board of review was influenced by the case of *Hoeper v. Tax Comm.* (1931) 284 U. S. 206, 216, 52 Sup. Ct. 120, 76 L. Ed. 248, in which the United States supreme court determined that an assessment of income tax against a husband, computed on the combined total of his income and that of his wife, as required by a Wisconsin statute, was in

violation of the due-process and equal-protection clauses of the Fourteenth amendment. In that case the court said:

"Under the law of Wisconsin the income of the wife does not at any moment or to any extent become the property of the husband. He never has any title to it, or controls any part of it. That income remains hers until the tax is paid, and what is left continues to be hers after that payment. The state merely levies a tax upon it. What Wisconsin has done is to tax as a joint income that which under its law is owned separately and thus to secure a higher tax than would be the sum of the taxes on the separate incomes."

Looking to the trust instrument, the board concluded that the father had parted with his property completely, and that the income from the trust, since it was the individual income of the son, could not, under the rule in the *Hoeper Case,* be added to that of the father. It therefore concluded that the additional assessment was void.

The commission reversed the board without writing an opinion in support of its decision. It appears to have been influenced by an argument which the assessor made in a brief submitted to the board, which was as follows:

"The provisions of the above paragraph make it possible for George L. Gilkey, as father of a minor child, to benefit to the extent of $5,000 from the earnings of the property of the minor child. If it were not for this provision of the trust, it would be necessary for George L. Gilkey, as father, to expend a sum sufficient for the care, support and education of his son from his private income. The fact that this sum may be expended from the income of the minor child by the express provision of the trust confers a distinct benefit to the taxpayer, George L. Gilkey, and also confers a degree of control over the income of the trust up to $5,000. We believe that that provision in the trust makes a distinct difference between the *Hoeper Case* above referred to and the case now at hand."

The circuit court found that the sum of $5,000 which Gilkey took in 1931 was not in excess of expenditures previ-

ously made by Gilkey as an individual for the care, support, education, and maintenance of his minor son, then aged sixteen years, and that the payment was made and intended as a reimbursement for such advances. The court concluded that this $5,000 was therefore a reimbursement rather than income.

Upon the appeal to this court, the commission has relied upon *Douglas v. Willcuts* (1935), 296 U. S. 1, 10, 56 Sup. Ct. 59, 80 L. Ed. 3, and upon *Helvering v. Schweitzer* (1935), 296 U. S. 551, 56 Sup. Ct. 304, 80 L. Ed. 389, a memorandum opinion reversing *Schweitzer v. Comm'r* (C. C. A., 7th Cir. 1935), 75 Fed. (2d) 702. Counsel for the taxpayer have attempted to distinguish the *Douglas Case* and have relied upon the *Hoeper Case*.

In *Douglas v. Willcuts* there was a trust agreement between Douglas and his wife, who secured a divorce shortly after the trust was created. Income of the trust was to go to Mrs. Douglas in lieu of alimony, but under the law of Minnesota, where the parties were divorced, the whole arrangement was subject to the control of the court. The federal tax officials determined that Douglas should include in his taxable income the amount of income paid to Mrs. Douglas under the provisions of the trust, because he was receiving the benefit of that income through the discharge of his legal obligation to support his divorced wife. This view was sustained by the court, which ruled that certain provisions of the statute, relating to income from trust estates, were inapplicable, saying:

"These provisions have appropriate reference to cases where the income of the trust is no longer to be regarded as that of the settlor, and we find no warrant for a construction which would preclude the laying of the tax against the one who through the discharge of his obligation enjoys the benefit of the income as though he had personally received it."

That case appears to be distinguishable from the present because the Douglas trust was subject to the control of the court, and any excess income beyond that necessary to discharge the husband's obligation was to be paid to him. Upon death of the divorced wife, the corpus was to revert to the husband. In the present case, the trust estate is clearly and irrevocably the property of Gilkey's son. We might distinguish the *Douglas Case* because of that fact, if it were not for the *Schweitzer Case* which we have mentioned above.

In the *Schweitzer Case* there was a trust set up by a father for the support, maintenance, and education of his minor children. Upon arriving at a certain age, the children were to receive equal portions of the estate, and the trusts were revocable only with the consent of the wife, who had a contingent interest in the remainder. The circuit court of appeals concluded that the corpus of this trust really belonged to the children, and that the income of the trust was not taxable to the father. It distinguished the *Douglas Case,* which had not yet been decided by the supreme court, and refused to accept the doctrine of the circuit court in that case with respect to a benefit from the discharge of a legal obligation. But upon appeal taken in both cases, the United States supreme court affirmed the *Douglas* decision and reversed the *Schweitzer* decision in a memorandum which cited the *Douglas Case* as controlling.

While the *Douglas Case* is not binding upon this court in the present controversy, we think that its reasoning may well be applied to the facts here presented. It appears from the terms of the trust agreement that Gilkey contemplated the application of trust income to the discharge of his legal obligation to support and educate his minor son. Clearly, it was his duty to support and educate him in a manner consistent with the circumstances of the family. Upon Gilkey's own testimony, it appears that the $5,000 which was allocated to

the son was no more than his fair share of the total expense of the family for the year 1931, and that the sums expended for the minor's benefit were no greater than might have been expected under the circumstances. It is therefore clear that Gilkey received a benefit from the money taken from the trust estate.

There is another consideration which convinces us that the $5,000 which Gilkey took in 1931 must be regarded as income to him, in spite of the fact that it was no more than he had actually expended for the support and education of his son. In view of two Wisconsin cases, we are satisfied that Gilkey has not brought himself within a rule which would permit him to charge the estate of his son with amounts which he had already expended in fulfilment of his legal duty.

The first of these cases is *Abrams v. United States Fidelity & Guaranty Co.* (1906) 127 Wis. 579, 106 N. W. 1091. A father died, leaving his minor children an estate consisting mostly of insurance. A sister of the deceased was appointed guardian. She took care of the children but never at any time made any charge for their care, lodging, or food. Through the infidelity of her agent, the corpus of the estate was lost and suit was brought upon the guardian's bond. This court said (p. 585) :

"It is contended that the court should have allowed the guardian a reasonable sum for lodging of the children and for her personal services in their care. The fact was that she voluntarily stood *in loco parentis* to these children and never intended to charge them anything for lodging or services. Under these circumstances neither the guardian nor the surety has any right to such credit."

The testimony of Gilkey shows that he did not determine in his own mind whether the $5,000 which he took from the trust estate was to be regarded as reimbursement for one

year only, or for the eight years since creation of the trust. He said:

"So finally my income was falling off, so one year I took $1,000 and that year I took $5,000. I really figured that wasn't for one year. I really figured it was over a period of years. I had the right to take it and I hadn't taken it, but I could use it for the personal expense. The family expenses were $27,373, so you see that I didn't take a quarter of it."

That Gilkey had no right to charge this amount against the trust estate upon a determination which was made after the money was expended, is shown by the ruling of this court in *Guardianship of Thienhaus* (1921), 175 Wis. 526, 532, 185 N. W. 531, in which it was said:

"Upon the appeal from the order of the county court the further question arises whether that court properly disallowed an item of $1,000 claimed by the guardian in his final account, which item is made up of sums of $100 per year for ten years, and which it is claimed was expended from the guardian's estate for the benefit of the ward. . . . The testimony of the guardian clearly indicates that when such amounts were disbursed by him they were not intended as payments from the estate to the ward, but were gifts from father to son, and the county court very properly refused to allow the same."

In *Burke v. Turner* (1881), 85 N. C. 500, 504, it was said:

"A father though he be the guardian of his child is not ordinarily permitted to charge for its maintenance or education. If able, he is himself bound to maintain his child, and if not so, he must, before being permitted to apply any portion of his ward's income to that end, procure the sanction of the proper court."

We do not now determine whether it was necessary, in view of the language of the trust instrument, for Gilkey to obtain a court order before using the trust income for the

support and education of his child. But we have no difficulty in concluding that the money which Gilkey paid to himself in 1931 cannot be regarded either as a reimbursement for money expended in previous years, or as money used during 1931, no detailed account having been kept to show for what purpose the money was used, and no showing having been made of the necessity for using trust money instead of his own.

It appears from the terms of this declaration of trust that it was created by Gilkey for the purpose of enabling him to relieve himself, when he chose, of the burden of supporting and educating his minor son out of his own income. He did not use the trust money until his own financial condition suggested it, but there is no showing in the record that the necessity was such as to justify a court in excusing Gilkey from his legal duty, and the findings in that respect are against the great weight and clear preponderance of the evidence. The $5,000 which he received in 1931 cannot, therefore, be regarded as a reimbursement for advances. It must be taken as a payment from the estate to Gilkey individually, not for the benefit of the son, but for the benefit of Gilkey himself. Since it benefited him, it was taxable income, and the judgment of the circuit court must be reversed.

*By the Court.*—Judgment reversed, with directions to enter judgment confirming the decision of the Wisconsin Tax Commission.