HARRISON, commissioner, *v.* TANNER-POINDEXTER COMPANY.

No. 12534. FEBRUARY 16, 1939. REHEARING DENIED MARCH 10, 1939.

682

*M. J. Yeomans, attorney-general,* and *Duke Davis,* for plaintiff. *Wilson, Bennell, Pedrick & Bennett* and *J. B. Moore,* for defendant.

*Dave M. Parker, F. M. Gleason,* and *Hendrix & Buchanan,* for persons at interest, not parties.

ATKINSON, Presiding Justice. It is declared in the Code, § 56-901: "A life-insurance policy is a contract by which the insurer, for a stipulated sum, engages to pay a certain amount of money if another shall die within the time limited by the policy. The life may be that of the insured or of another in the continuance of whose life the insured has an interest." In the Code, § 56-902, it is declared: "Contracts of life insurance may be taken only by persons or corporations specially authorized by law so to do."

These sections of the Code were also contained in the Civil Code of 1910, and consequently were in vogue at the time of the decisions in each of the following cases: *Benevolent Burial Association Incorporated* v. *Harrison,* 181 *Ga.* 230 (181 S. E. 829); *Clark* v. *Harrison,* 182 *Ga.* 56 (184 S. E. 620); *South Georgia Funeral Homes Inc.* v. *Harrison,* 182 *Ga.* 60 (184 S. E. 875); *South Georgia Funeral Homes Inc.* v. *Harrison,* 183 *Ga.* 379 (188 S. E. 529). In each of the first three cases above cited it was held that the judge, at interlocutory hearing, was authorized to find from the evidence that the defendant was engaged in the life-insurance business without having complied with the regulatory provisions of law, and did not err in granting injunction. After grant of injunction in the last of said cases, the defendant was charged with contempt of court as for violation of the injunction. The response was that the company was operating under a different contract which under the circumstances was not a life-insurance business, and consequently there was no violation of the injunction. The judgment of the trial court holding the respondent in contempt was reversed, October 16, 1936. *South Georgia Funeral Homes Inc.* v. *Harrison,* supra. It was said in the opinion: "We think it can safely be said, however, that a contract of life insurance must contain an element of risk in so far as the particular individual contract is concerned. The contract now being sold by the defendants, and by reason of the sale of which this contempt proceeding arose, is one wherein the defendant corporation, for a fixed and definite sum in hand paid or payable in instalments, agrees to render and perform or cause to be rendered and performed, for the purchaser or any one member of his family, certain funeral services, with the additional obligation to allow the purchaser to buy funeral merchandise in connection with the funeral, for a price definite and ascertainable. While the performance of the contract is contingent upon death, this in and of itself does not make it a contract of life insurance, nor does the fact that the fixed sum is payable in instalments. There is nothing in the contract itself, nor is there any evidence, to show that the amount paid by the purchaser is less than the value of the funeral services contracted to be performed, or that there is any element of risk involved, either on the part of the purchaser or the defendant corporation."

That decision was rendered under the general law as then exist-

ing, and no doubt had much to do with the passage of the act at the next session of the legislature, approved March 31, 1937 (Ga. L. 1937, p. 702). The legislature will be presumed to have taken into consideration the question of risk and method of doing business as described in the above-quoted excerpt from the decision of this court. With them in mind it was declared: "Section 1. That a contract of life insurance is one whereby the insurer, for a consideration, assumes an obligation to be performed upon the death of the insured, or upon the death of another in the continuance of whose life the insured has an interest, whether such obligation be one to pay a sum of money, or to perform service, or to furnish goods, wares or merchandise or other thing of value, and whether the cost or value of the undertaking on the part of the insurer be more or less than the consideration flowing to him. Section 2. Every person, firm or corporation writing or issuing contracts of life insurance, as defined in the foregoing section, shall be deemed to be engaged in the business of life insurance and shall be subject to all of the provisions of the laws of Georgia regulating life-insurance companies." This act does not purport to supersede the former statutes embodied in the Code, but supplements them to the extent shown by its terms. The instant case arose after passage of this act. The business was conducted in the following manner: Separate written contracts would be signed by the defendant as vendor and its several customers as vendees. The substance of one of the contracts sufficiently illustrates the character of all:

"The first party is engaged in buying and selling household and kitchen furniture and furnishings, including funeral supplies and undertaking business, conducting funerals, and rendering service therewith. The second party desires to and agrees to buy from the first party the articles hereinafter enumerated, which first party agrees to sell, and does sell to the second party on terms, conditions, and provisions hereinafter stated, and the second party agrees, and does hereby purchase same, on the terms and conditions stated in this contract, which articles are described as follows: Description of articles: one embossed plush half-couch casket size 6/3, one concrete vault, one blue serge suit. . .

"It is mutually understood and agreed between the parties that the price to be paid for said articles above named is the sum of $250, to be paid in instalments as hereinafter provided;

the sum of $4 having been paid on this date, and the sum of $ .75 to be paid on each 2 months thereafter, on the first of each such month, until the purchase-price is paid, with interest only after maturity, such payments to be applied on the articles so purchased. . . In the event of failure to pay any instalment or any number of such, all said instalments provided for in this contract may be declared due and payable by said first party, unless waived in writing by first party, then the amount then existing under this contract shall become due and payable. It is further agreed by the parties that delivery of the articles of merchandise so purchased as aforesaid is hereby waived, the same to be delivered upon the payment of $100 of purchase-price. In the event of death of second party before full compliance with this contract, the liability for the remaining instalments shall be paid from the estate of the second party in amounts stated in this contract on the same instalment plan and in the amounts herein stated: . . There are no verbal or prior agreements that are not merged in this contract, and no statement made by any agent not embodied herein shall vary or change, modify or alter, any of the provisions of this contract; nor shall there be any waivers of any such provisions, except in writing, signed by the parties thereto."

After execution of such contract the parties proceeded to perform their respective obligations. As matter of experience, the company did not make actual delivery of funeral merchandise "except when some one has died." In a number of instances where funerals had been furnished and payments made in excess of $100, but less than the aggregate stipulated instalments, there was no demand for the balance of the instalments from the estate of the deceased purchaser. These, however, were exceptions to the general course. Under the foregoing method the company, in the language of the act of 1937, supra, "for a consideration, assumes an obligation to be performed upon the death of the" purchaser "or upon the death of another in the continuance of whose life . . [he] has an interest," namely to furnish the goods and render the stipulated funeral service. The result is that the business is to be characterized as a life-insurance business within the meaning of the act of 1937, and the company—whether it be an individual "person, firm or corporation . . shall be deemed to be engaged in the business of life insurance," within the meaning of section 1 of the

686

act, and "subject to all of the provisions of the laws of Georgia regulating life-insurance companies." It is true the contract provides that the specified articles of merchandise may be delivered at any time upon the payment of $100. But burial of the dead is the main object of the purchase, and is essential to complete performance of the company's obligation. The goods are desired only in connection with the funeral service which in natural course of events must follow death, as no intent to bury the living could be attributed to the parties. In the circumstances the company was engaged in the life-insurance business as defined in the act of 1937, supra, and was subject to the regulatory provisions of the law relating to life insurance generally. Under the pleadings and the evidence, the judge erred in refusing an injunction.

*Judgment reversed. All the Justices concur.*